SEYFARTH SHAW LLP
Joshua A. Rodine (SBN 237774)
jrodine@seyfarth.com
Heather E. Horn (SBN 318242)
hhorn@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendant
IRON MOUNTAIN INFORMATION
MANAGEMENT, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL Y. WALKER, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>IRON MOUNTAIN INFORMATION MANAGEMENT, LLC, a Delaware limited liability company d/b/a CROZIER FINE ARTS; and DOES 1 through 20, inclusive,<br><br>                    Defendants. | Case No. _____<br><br>**DECLARATION OF HEATHER E. HORN IN SUPPORT OF DEFENDANT IRON MOUNTAIN INFORMATION MANAGEMENT, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Los Angeles County Superior Court Case No. 26STCV09041]<br><br>Action Filed:     March 20, 2026 |

DECLARATION OF HEATHER E. HORN

325172415v.1

## DECLARATION OF HEATHER E. HORN

I, Heather E. Horn, hereby declare and state as follows:

1.     I have personal knowledge of the facts contained in this declaration, and if called as a witness, could and would testify as to their accuracy.

2.     I am an attorney admitted to practice in the State of California, and I am a partner at the law firm of Seyfarth Shaw LLP.  I am one of the lawyers responsible for representing Defendant Iron Mountain Information Management, LLC ("Iron Mountain") in the above-captioned lawsuit filed on behalf of Plaintiff April Y. Walker ("Plaintiff"). All of the pleadings and correspondence in this lawsuit are maintained in our office in the ordinary course of business under my direction and control.  I have reviewed the pleadings and correspondence in preparing this declaration.

3.     **Exhibit A** and **Exhibit B** attached to the Notice of Removal constitute all of the pleadings in the Superior Court's record that have been served on Iron Mountain, filed by Iron Mountain, or retrieved from the Court's records prior to the filing of this Notice of Removal.  Iron Mountain has not filed or received any other pleadings or papers, other than the pleadings described as **Exhibit A** and **Exhibit B**, in this action prior to this Notice of Removal.

4.     Attached hereto as **Exhibit C** are true and correct copies of jury verdict reports for cases similar to Plaintiff's allegations and request for damages. Attached hereto as **Exhibit D** are true and correct copies of jury verdict reports for cases that have awarded attorneys' fees in excess of $75,000.00 involving employment- related claims.

5.     I have been licensed to practice law since 2017. Based on my experience, attorneys' fees in employment discrimination cases often exceed $75,000.00.  I anticipate depositions being taken in this case and that ultimately Defendant will file a Motion for Summary Judgment.  In this regard, it is more likely than not that the fees will exceed $75,000.00 through discovery and a summary judgment hearing, and fees would certainly exceed $75,000.00 if the case proceeds to trial.

DECLARATION OF HEATHER E. HORN

325172415v.1

I declare under penalty of perjury under the laws of California and the United States that the foregoing is true and correct.

This declaration was executed on April 28, 2026, at Los Angeles, California.

_____
Heather E. Horn

3

325172415v.1

# EXHIBIT A

Electronically FILED by
Superior Court of California,
County of Los Angeles
3/20/2026 10:56 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Galicia, Deputy Clerk

Christina M. Coleman (SBN 192578)
*christina@christinacolemanlaw.com*
**LAW OFFICES OF CHRISTINA M. COLEMAN, APC**
113 N. San Vicente Blvd., Suite 341
Beverly Hills, CA  90211
Phone:  (323) 592-3605
Fax:  (323) 843-1715

Attorney for Plaintiff,
APRIL Y. WALKER

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL**

| | |
|---|---|
| APRIL Y. WALKER, an individual,<br><br>          Plaintiff,<br><br>   v.<br><br>IRON MOUNTAIN INFORMATION MANAGEMENT, LLC, a Delaware limited liability company d/b/a CROZIER FINE ARTS; and DOES 1 through 20, inclusive,<br><br>          Defendants. | Case No.  26STCV09041<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>1. **DISCRIMINATION IN VIOLATION OF GOV'T CODE §§12940 ET SEQ.;**<br><br>2. **HARASSMENT IN VIOLATION OF GOV'T CODE §§12940 ET SEQ.;**<br><br>3. **RETALIATION IN VIOLATION OF GOV'T CODE §§12940 ET SEQ.;**<br><br>4. **FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION IN VIOLATION OF GOV'T CODE §12940(k);**<br><br>5. **FOR DECLARATORY JUDGMENT;**<br><br>6. **RETALIATION (LAB. CODE §1102.5); AND**<br><br>7. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**<br><br>     **DEMAND OVER $35,000**<br><br>**[DEMAND FOR JURY TRIAL]** |

**COMES NOW PLAINTIFF, APRIL Y. WALKER,** and for causes of action against the

Defendants and each of them, alleges as follows:

-1-

COMPLAINT FOR DAMAGES

## JURISDICTION

1. This Court is the proper court, and this action is properly filed in Los Angeles County, because Defendants' obligations and liability arise therein, because Defendants maintain offices and transact business within Los Angeles County, and because the work that is the subject of this action was performed by Plaintiff in Los Angeles County.

## THE PARTIES

2. Plaintiff, APRIL Y. WALKER at all times relevant hereto was a resident of the County of Los Angeles, State of California.

3. Plaintiff is informed and believes, and based thereupon alleges, that at all times relevant hereto, Defendant IRON MOUNTAIN INFORMATION MANAGEMENT, LLC was and is a Delaware limited liability company doing business as CROZIER FINE ARTS ("CROZIER") in the County of Los Angeles, State of California.

4. Plaintiff is informed and believes, and based thereupon alleges, that at all times relevant hereto, CROZIER owned and operated a private company offering art services and logistics worldwide.

5. At all times relevant herein, CROZIER and DOES 1-20 were Plaintiff's employers, joint employers and/or special employers within the meaning of Government Code §§12926, subdivision (d), 12940, subdivisions (a),(h),(1), (h)(3)(A), and (i), and 12950, and regularly employ five (5) or more persons and are therefore subject to the jurisdiction of this Court.

6. The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as DOES 1-20, inclusive, are unknown to Plaintiff at this time and therefore said Defendants are sued by such fictitious names. Plaintiff will seek leave to amend this complaint to insert the true names and capacities of said Defendants when the same become known to Plaintiff. Plaintiff is informed and believes, and based thereupon alleges, that each of the fictitiously named Defendants is responsible for the wrongful acts alleged herein, and is therefore liable to Plaintiff as alleged hereinafter.

7. Plaintiff is informed and believes, and based thereupon alleges, that at all times relevant hereto, Defendants, and each of them, were the agents, employees, managing agents, supervisors, coconspirators, parent corporation, joint employers, alter egos, successors, and/or joint ventures of the

-2-
COMPLAINT FOR DAMAGES

other Defendants, and each of them, and in doing the things alleged herein, were acting at least in part within the course and scope of said agency, employment, conspiracy, joint employer, alter ego status, successor status and/or joint venture and with the permission and consent of each of the other Defendants.

8.      Plaintiff is informed and believes, and based thereupon alleges, that Defendants, and each of them, including those defendants named as DOES 1-20, acted in concert with one another to commit the wrongful acts alleged herein, and aided, abetted, incited, compelled and/or coerced one another in the wrongful acts alleged herein, and/or attempted to do so, including pursuant to Government Code §12940(i).  Plaintiff is further informed and believes, and based thereupon alleges, that Defendants, and each of them, including those defendants named as DOES 1-20, and each of them, formed and executed a conspiracy or common plan pursuant to which they would commit the unlawful acts alleged herein, with all such acts alleged herein done as part of and pursuant to said conspiracy, intended to cause and actually causing Plaintiff harm.

9.      Whenever and wherever reference is made in this complaint to any act or failure to act by a Defendant or co-Defendant, such allegations and references shall also be deemed to mean the acts and/or failures to act by each Defendant acting individually, jointly and severally.

10.     Plaintiff has filed complaints of discrimination, harassment, retaliation, failure to prevent discrimination or retaliation, and wrongful termination under Government Code §§12940, et seq., the California Fair Employment and Housing Act ("FEHA") with the California Civil Rights Department (formerly the Department of Fair Employment and Housing), and has satisfied Plaintiff's administrative prerequisites with respect to these and all related filings.

**ALTER EGO, AGENCY, SUCCESSOR AND JOINT EMPLOYER**

11.     Plaintiff is informed and believes, and based thereon alleges, that there exists such a unity of interest and ownership between CROZIER and DOES 1-20 that the individuality and separateness of defendants have ceased to exist.

12.     Plaintiff is informed and believes, and based thereon alleges, that despite the formation of purported corporate existence, CROZIER and DOES 1-20 are, in reality, one and the same, including, but not limited to because:

-3-
COMPLAINT FOR DAMAGES

a.      CROZIER is completely dominated and controlled by DOES 1-20, who personally committed the frauds and violated the laws as set forth in this complaint, and who have hidden and currently hide behind Defendants to perpetrate frauds, circumvent statutes, or accomplish some other wrongful or inequitable purpose.

b.      CROZIER and DOES 1-20 derive actual and significant monetary benefits by and through one another's unlawful conduct, and by using one another as the funding source for their own personal expenditures.

c.      CROZIER and DOES 1-20, while really one and the same, were segregated to appear as though separate and distinct for purposes of perpetrating a fraud, circumventing a statute, or accomplishing some other wrongful or inequitable purpose.

d.      CROZIER does not comply with all requisite corporate formalities to maintain a legal and separate corporate existence.

e.      The business affairs of CROZIER and DOES 1-20 are, and at all times relevant were, so mixed and intermingled that the same cannot reasonably be segregated, and the same are in inextricable confusion.  CROZIER is, and at all times relevant hereto was, used by DOES 1-20 as a mere shell and conduit for the conduct of certain of Defendants' affairs, and are, and were, the alter ego of DOES 1-20.  The recognition of the separate existence of Defendants would not promote justice, in that it would permit Defendants to insulate themselves from liability to Plaintiff for violations of the Government Code and other statutory violations.  The corporate existence of CROZIER and DOES 1-20 should be disregarded in equity and for the ends of justice because such disregard is necessary to avoid fraud and injustice to Plaintiff herein.

13.     Accordingly, CROZIER constitutes the alter ego of DOES 1-20, and the fiction of their separate corporate existence must be disregarded.

14.     As a result of the aforementioned facts, Plaintiff is informed and believes, and based thereon alleges that CROZIER and DOES 1-20 are Plaintiff's joint employers by virtue of a joint enterprise, and that Plaintiff was an employee of CROZIER and DOES 1-20.  Plaintiff performed services for each and every one of Defendants, and to the mutual benefit of all Defendants, and all

-4-
COMPLAINT FOR DAMAGES

Defendants shared control of Plaintiff as an employee, either directly or indirectly, and the manner in which Defendants' business was and is conducted.

15. Alternatively, Plaintiff is informed and believes and, based thereupon alleges, that as and between DOES 1-20, CROZIER, or any of them, (1) there is an express or implied agreement of assumption pursuant to which CROZIER and/or DOES 1-20 agreed to be liable for the debts of the other Defendants, (2) the transaction between CROZIER and/or DOES 1-20 and the other Defendants amounts to a consolidation or merger of the two corporations, (3) CROZIER and/or DOES 1-20 are a mere continuation of the other Defendants, or (4) the transfer of assets to CROZIER and/or DOES 1-20 is for the fraudulent purpose of escaping liability for Defendants' debts. Accordingly, CROZIER and/or DOES 1-20 are the successors of one or more of the other Defendants, and are liable on that basis.

**FACTUAL ALLEGATIONS**

16. Plaintiff began working for Defendants on August 5, 2018 as a General Manager, Crozier, after Plaintiff's prior employer was acquired by Defendants. At all times, Plaintiff performed her job duties satisfactorily, quickly receiving promotions, raises, and bonuses throughout her tenure with Defendants.

17. Beginning in late 2018 and early 2019, Plaintiff began suffering sexual harassment from Defendants, by and through Defendants' employee, Michael Simonetti, who was gossiping to Plaintiff's coworkers about a prior sexual harassment case Plaintiff had brought while at her former employer, and also making inappropriate and lewd sexual comments about Plaintiff's body and figure at work events to other of Defendants' employees. At this time, Simonetti was a General Manager at Defendants, and Defendants' human resources personnel were aware of these instances, having either witnessed some personally and/or having received reports from other employees. Defendants took no action to remedy the situation, even after Plaintiff expressed to human resources that she was suffering harm as a result of Simonetti's behavior, and requested human resources take appropriate actions to abate Simonetti's misconduct.

18. Shortly thereafter, Plaintiff was transferred to Los Angeles and took on the role of Senior General Manager, with significant expanded responsibilities. Despite this transfer, Simonetti continued

-5-
COMPLAINT FOR DAMAGES

to sexually harass Plaintiff on every occasion that Plaintiff was required to interact with Simonetti in person. Simonetti continued to flirt with Plaintiff, commenting on her appearance and body, and made deliberate attempts to get Plaintiff in situations alone with him. With Defendants having never taken prior action, Simonetti grew bolder in his harassment, using increasingly vulgar language to describe Plaintiff's body to Plaintiff directly as well as her colleagues.

19. Despite the harassment, Plaintiff continued to succeed and excel in her positions at Defendants, contributing significantly to Defendants' achievements and growth, for which Plaintiff received further raises, stock awards and bonuses. In December 2021, Simonetti was promoted to Senior Director, Centers of Excellence, a position created specifically for Simonetti. Simonetti continued to sexually harass Plaintiff, continuing to reference the prior sexual harassment case, falsely gossiping that Plaintiff must have had sex with the defendant in that prior case, and continuing to comment on Plaintiff's appearance and body to their colleagues at Defendants, who reported Simonetti's comments to Plaintiff. In every communication Plaintiff had with senior leadership in which Simonetti's comments were shared with her, Plaintiff expressed surprise, anger and distress over the unabated harassment of Simonetti. Despite Plaintiff's protests and the full awareness of the senior leadership team, Simonetti continued unabated.

20. In the meantime, Defendants began excluding Plaintiff from promotion opportunities, filling them with outsiders despite her qualifications and expressed interest in the roles, some of which Defendants did not even tell Plaintiff about. Plaintiff continued to express her interest in further growing with the company. Plaintiff invited Defendants to advise her of any gaps or weaknesses in her performance so she would be prepared when future opportunities arose, but none were noted.

21. In April 2023, Plaintiff was finally promoted to Regional Director, West, signaling her continued growth and success within Defendants' organization. In her new role, Simonetti installed himself as one of Plaintiff's *de facto* supervisors, requiring Plaintiff send private information to him in addition to Plaintiff's actual supervisor, even though Simonetti had no legitimate need or purpose in demanding this information. On April 19, 2023, Plaintiff forwarded Simonetti's inappropriate request to her supervisor, James Hendy, requesting clarification of Simonetti's role. On April 25, 2023, to Plaintiff's shock and horror, Hendy, informed her that Simonetti had been promoted to Senior Director,

North American Operations, and would now be directly supervising her, and that Simonetti would be reporting to him (Hendy) as Senior VP.

22. The next day, Plaintiff emailed Tracie Blakes, Defendants' Sr. Director, Vice President Human Resources, reiterating her prior complaints that she had been and continued to be excluded from leadership roles, that a new position had been specifically created for and given to Simonetti, and that Defendants were failing to promote women to leadership positions. Approximately one week later, Plaintiff discussed these concerns with her prior supervisor (Hendy), and also expressed her discomfort in reporting to Simonetti, but Hendy did not want to hear it. Nobody at Defendants reached out to Plaintiff to discuss her concerns or discomfort.

23. Beginning in May 2023 and continuing throughout the summer through August 2023, now as her direct supervisor, Simonetti begin using his direct authority to insist on Plaintiff interacting with him privately, demanded she accompany him to dinner and drinks after work, pressuring her to go out with him for drinks and/or dinner or just to meet up, making Plaintiff feel increasingly uncomfortable. Simonetti continued to make vulgar comments about her body, telling her she had "great tits" on multiple occasions, that he loved her hips, which were great for child-bearing, that she had "filled out nicely," that she must have been very fertile, that she was "very curvy, like a classic Coca Cola bottle." Knowing Plaintiff's husband was having health issues, Simonetti offered to be there for Plaintiff "physically or emotionally," and that there was no need to "wait" (presumably until after her husband had passed), and Simonetti could start supporting her "now." At on-site events, Simonetti would offer to meet Plaintiff there and "see where the night leads us." On one occasion in late May 2023, Simonetti attempted to pressure Plaintiff into spending the night with him in his hotel room. Simonetti began questioning Plaintiff about her prior sexual harassment complaint, attempting to defend this inappropriate topic by saying he could use the information to help Plaintiff get promoted or advance within the company. Plaintiff did her best to gracefully and professionally dodge Simonetti's advances, but was fearful of defending herself more aggressively due to Simonetti's new role as her supervisor and Defendants' failure to stop Simonetti in the many years since Plaintiff had originally complained about his conduct.

-7-
COMPLAINT FOR DAMAGES

24.    Clearly angry about Plaintiff's continued rejection of his advances, Simonetti immediately began targeting Plaintiff by providing false information to Hendy (Simonetti's supervisor and Plaintiff's former supervisor) about Plaintiff's performance.    Hendy had previously made comments to Plaintiff in response to her statements that she was uncomfortable reporting to Simonetti that seemed as though Hendy not only thought Plaintiff welcomed Simonetti's conduct, but that they were actually having an affair.

25.    On August 31, 2023, despite no longer being Plaintiff's direct supervisor, Hendy invited Plaintiff to a "catch-up meeting."    Rather than being a catch-up meeting, human resources was present and Hendy told Plaintiff that he was going to put her on a 60-day Performance Improvement Plan (PIP), and that Plaintiff could either go on the PIP and continue working, or could leave the company and take a severance.    Plaintiff was completely blindsided because she had not received any negative feedback from anyone during her tenure at Defendants and, to the contrary, had received nothing but praise, accolades, promotions, raises and bonuses.    Plaintiff stated her surprise and also asked why Hendy was issuing the PIP and not her direct supervisor, Simonetti, as was Defendants' regular practice, but Hendy neither explained the basis for the PIP nor why he was involved.    When Plaintiff finally received the PIP via email later that day, Plaintiff learned that it was replete with false allegations concerning Plaintiff's performance and alleged prior negative feedback which she had never received. In fact, Plaintiff had only months earlier been given a promotion, a raise, and a $70,000 bonus.

26.    Despite the falsity of the PIP, Plaintiff accepted it and highlighted her commitment to addressing the outlined concerns (despite their falsity).    Thereafter, Plaintiff complied with all of the requirements of the PIP ahead of schedule, and reported her progress to Simonetti and Hendy, and prepared a detailed Performance Strategy Plan.    Simonetti repeatedly rejected Plaintiff's plan, spoke to her in a condescending manner, and made unreasonable demands and conditions outside the terms of the PIP.    Plaintiff continued to comply with Simonetti's demands and work through the false PIP, and to work on the demanded revised strategy plan.

27.    On October 4, 2023, nearly a full month before the expiration of the 60-day PIP, Blakes told Plaintiff that Hendy and Simonetti were dissatisfied with her performance and had instructed Blakes to proceed with her termination.    Despite Plaintiff's submission to Blakes of the supporting

-8-

COMPLAINT FOR DAMAGES

documentation confirming she had complied with everything asked of her during the PIP, Plaintiff's termination was effected on October 13, 2023.

28. Plaintiff believes the decisions to place her on an unwarranted PIP and then prematurely terminate her employment was because of her sex or gender, gender, rejection of Simonetti's advances, and complaints about gender/sex or gender inequality at Defendants and Simonetti's harassment. Plaintiff also believes she was harassed based on her sex or gender/gender.

29. Plaintiff's termination was substantially motivated by Plaintiff's sex or gender and/or engagement in protected activities. Defendants' discriminatory and retaliatory animus is evidenced by the previously mentioned facts and the lack of any legitimate justification for Plaintiff's termination.

30. Defendants' conduct described herein was undertaken, authorized, and/or ratified Defendants' officers, directors and/or managing agents, including, but not limited to Hendy, Simonetti, Blakes, and those identified herein as DOES 1 through 20, who were authorized and empowered to make decisions that reflect and/or create policy for Defendants. The aforementioned conduct of said managing agents and individuals was therefore undertaken on behalf of Defendants who further had advanced knowledge of the actions and conduct of said individuals whose actions and conduct were ratified, authorized, and approved by managing agents whose precise identities are unknown to Plaintiff at this time and are therefore identified and designated herein as DOES 1 through 20, inclusive.

31. As a result of Defendants' actions, Plaintiff has suffered and will continue to suffer general and special damages, including severe and profound pain and emotional distress, anxiety, depression, headaches, tension, and other physical ailments, as well as medical expenses, expenses for psychological counseling and treatment, and past and future lost wages and benefits.

32. As a result of the above, Plaintiff is entitled to past and future lost wages, bonuses, commissions, benefits and loss or diminution of earning capacity.

33. Plaintiff claims general damages for emotional and mental distress and aggravation in a sum in excess of the jurisdictional minimum of this Court.

34. Because the acts taken toward Plaintiff were carried out by officers, directors and/or managing agents acting in a deliberate, cold, callous, cruel and intentional manner, in conscious disregard of Plaintiff's rights and in order to injure and damage Plaintiff, Plaintiff requests that punitive

-9-

COMPLAINT FOR DAMAGES

damages be levied against Defendants and each of them, in sums in excess of the jurisdictional minimum of this Court.

## FIRST CAUSE OF ACTION

## FOR DISCRIMINATION IN VIOLATION OF GOV'T CODE §§12940 ET SEQ.

## AGAINST ALL DEFENDANTS

35.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 30, inclusive, as though set forth in full herein.

36.     At all times hereto, the FEHA was in full force and effect and was binding upon Defendants and each of them.

37.     Pursuant to Government Code §12926(l),as such term is used under FEHA, "on the bases enumerated in this part" means or refers to discrimination on the bases of one or more of the protected characteristics under FEHA.  Pursuant to Government Code §12920, it is the purpose of the FEHA to provide effective remedies that will eliminate discriminatory practices, including discrimination not just because of one protected trait, but also because of the combination of two or more protected bases.

38.     FEHA requires Defendants to refrain from discriminating against an employee on the basis of sex or gender, or a combination of two or more of these bases, and to prevent discrimination on the basis of sex or gender, or a combination of two or more of these bases, and engagement in protected activities from occurring.

39.     Plaintiff was a member of multiple protected classes as a result of Plaintiff's sex or gender.

40.     At all times relevant hereto, Plaintiff was performing competently in the position Plaintiff held with Defendants.

41.     Plaintiff suffered the adverse employment actions of unlawful discrimination, harassment, denial of promotions, unwarranted discipline, and termination, and was harmed thereby.

42.     Plaintiff is informed and believes that Plaintiff's sex or gender, and/or some combination of these protected characteristics under Government Code §§ 12920 and 12926(l) were

-10-

COMPLAINT FOR DAMAGES

motivating reasons and/or factors in the decisions to subject Plaintiff to the aforementioned adverse employment actions.

43.     Said conduct violates the FEHA, and such violations were a proximate cause in Plaintiff's damage as stated below.

44.     The damage allegations of Paragraphs 31 through 34, inclusive, are herein incorporated by reference.

45.     The foregoing conduct of Defendants individually, or by and through their officers, directors and/or managing agents, was intended by the Defendants to cause injury to the Plaintiff or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights such as to constitute malice, oppression, or fraud under Civil Code §3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

46.     Pursuant to Government Code §12965(b), Plaintiff requests a reasonable award of attorneys' fees and costs, including expert fees pursuant to the FEHA.

**SECOND CAUSE OF ACTION**

**FOR HARASSMENT IN VIOLATION OF GOV'T CODE §§12940 ET SEQ.**

**AGAINST ALL DEFENDANTS**

47.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 30, inclusive, as though set forth in full herein.

48.     At all times hereto, the FEHA was in full force and effect and was binding upon Defendants and each of them.

49.     As such term is used under FEHA, "on the bases enumerated in this part" means or refers to harassment on the bases of one or more of the protected characteristics under FEHA. Pursuant to Government Code §12920, it is the purpose of the FEHA to provide effective remedies that will eliminate discriminatory practices, including discrimination not just because of one protected trait, but also because of the combination of two or more protected bases.

-11-

COMPLAINT FOR DAMAGES

50.     These laws set forth in the preceding paragraph require Defendants to refrain from harassing, or creating, or maintaining a hostile work environment against an employee based upon the employee's sex, gender, or a combination of two or more of these bases, and engagement in protected activities, as set forth hereinabove.

51.     Defendants' harassing conduct was unwelcome by Plaintiff, and unreasonably interfered with plaintiff's work performance and/or created an intimidating, hostile, or offensive working environment, a reasonable person in Plaintiff's circumstances would have considered the work environment to be intimidating, hostile, offensive or abusive.

52.     Defendants violated the FEHA and the public policy of the State of California which is embodied in the FEHA by creating a hostile work environment and harassing Plaintiff because of Plaintiff's sex, gender, engagement in protected activities, and/or some combination of these protected characteristics, as set forth hereinabove.

53.     The above said acts were perpetrated upon Plaintiff by a supervisor, and/or Defendants knew or should have known of the conduct but failed to take immediate and appropriate corrective action.

54.     The above said acts of Defendants constitute violations of the FEHA and violations of the public policy of the State of California.  Such violations were a proximate cause in Plaintiff's damage as stated below.

55.     The damage allegations of Paragraphs 31 through 34, inclusive, are herein incorporated by reference.

56.     The foregoing conduct of Defendants individually, or by and through their officers, directors and/or managing agents, was intended by the Defendants to cause injury to the Plaintiff or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights such as to constitute malice, oppression, or fraud under Civil Code §3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

-12-

COMPLAINT FOR DAMAGES

57. Pursuant to Government Code §12965(b), Plaintiff requests a reasonable award of attorneys' fees and costs, including expert fees pursuant to the FEHA.

### THIRD CAUSE OF ACTION

### FOR RETALIATION IN VIOLATION OF GOV'T CODE §§12940 ET SEQ.

### AGAINST ALL DEFENDANTS

58. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 30, inclusive, as though set forth in full herein.

59. At all times hereto, the FEHA was in full force and effect and was binding upon Defendants and each of them.

60. These laws set forth in the preceding paragraph require Defendants to refrain from retaliating against an employee for engaging in protected activity.

61. Plaintiff engaged in the protected activities of complaining about and protesting Defendants' discriminatory and harassing conduct towards Plaintiff based upon Plaintiff's sex or gender.

62. Plaintiff suffered the adverse employment actions of unlawful discrimination, harassment, denial of promotions, unwarranted discipline, and termination, and was harmed thereby.

63. Plaintiff is informed and believes that Plaintiff's conduct of complaining about and protesting about Defendants' discriminatory and harassing conduct were motivating reasons and/or factors in the decisions to subject Plaintiff to the aforementioned adverse employment actions.

64. Defendants violated the FEHA by retaliating against Plaintiff and terminating Plaintiff for attempting to exercise Plaintiff's protected rights, as set forth hereinabove.

65. Plaintiff is informed and believes, and based thereon alleges, that the above acts of retaliation committed by Defendants were done with the knowledge, consent, and/or ratification of, or at the direction of, each other Defendant and the other Managers.

66. The above said acts of Defendants constitute violations of the FEHA, and were a proximate cause in Plaintiff's damage as stated below.

67. The damage allegations of Paragraphs 31 through 34, inclusive, are herein incorporated by reference.

-13-

COMPLAINT FOR DAMAGES

68.     The foregoing conduct of Defendants individually, or by and through their officers, directors and/or managing agents, was intended by the Defendants to cause injury to the Plaintiff or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights such as to constitute malice, oppression, or fraud under Civil Code §3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

69.     Pursuant to Government Code §12965(b), Plaintiff requests a reasonable award of attorneys' fees and costs, including expert fees pursuant to the FEHA.

## FOURTH CAUSE OF ACTION

## FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, AND RETALIATION

## IN VIOLATION OF GOV'T CODE §12940(k)

## AGAINST ALL DEFENDANTS

70.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 30, inclusive, as though set forth in full herein.

71.     At all times hereto, the FEHA, including in particular Government Code §12940(k), was in full force and effect and was binding upon Defendants.  This subsection imposes a duty on Defendants to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring.  As alleged above, Defendants violated this subsection and breached their duty by failing to take all reasonable steps necessary to prevent discrimination, harassment and retaliation from occurring.

72.     The above said acts of Defendants constitute violations of the FEHA, and were a proximate cause in Plaintiff's damage as stated below.

73.     The damage allegations of Paragraphs 31 through 34, inclusive, are herein incorporated by reference.

74.     The foregoing conduct of Defendants individually, or by and through their officers, directors and/or managing agents, was intended by the Defendants to cause injury to the Plaintiff or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the

-14-

COMPLAINT FOR DAMAGES

rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights such as to constitute malice, oppression, or fraud under Civil Code §3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

75.    Pursuant to Government Code §12965(b), Plaintiff requests a reasonable award of attorneys' fees and costs, including expert fees pursuant to the FEHA.

## FIFTH CAUSE OF ACTION

## FOR DECLARATORY JUDGMENT

## AGAINST ALL DEFENDANTS

76.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 75, inclusive, as though set forth in full herein.

77.    Government Code §12920 sets forth the public policy of the State of California as follows:

It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, reproductive health decisionmaking, or military and veteran status.

It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment for these reasons foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advancement, and substantially and adversely affects the interests of employees, employers, and the public in general.

Further, the practice of discrimination because of race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, veteran or military status, or genetic information in housing accommodations is declared to be against public policy.

It is the purpose of this part to provide effective remedies that will eliminate these discriminatory practices, including discrimination not just because of one protected trait, but also because of the combination of two or more protected bases.

This part shall be deemed an exercise of the police power of the state for the protection of the welfare, health, and peace of the people of this state.

-15-

COMPLAINT FOR DAMAGES

78. Government Code §12920.5 embodies the intent of the California legislature and states:

> In order to eliminate discrimination, it is necessary to provide effective remedies that will both prevent and deter unlawful employment practices and redress the adverse effects of those practices on aggrieved persons. To that end, this part shall be deemed an exercise of the Legislature's authority pursuant to Section 1 of Article XIV of the California Constitution.

79. Moreover, Government Code §12921, subdivision (a) says in pertinent part:

> The opportunity to seek, obtain, and hold employment without discrimination because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, reproductive health decisionmaking, or veteran or military status is hereby recognized as and declared to be a civil right.

80. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties as it is believed that Defendants may allege that they did not discriminate and retaliate against Plaintiff; that Plaintiff was not terminated as a result of Plaintiff's sex, gender, engagement in protected activities, and/or some combination of these protected characteristics. Plaintiff contends that Defendants did discriminate and retaliate against Plaintiff on the basis of Plaintiff's sex, gender, engagement in protected activities, and/or some combination of these protected characteristics; and that Plaintiff was retaliated against and, ultimately wrongfully terminated as a result of Plaintiff's sex, gender, engagement in protected activities, and/or some combination of these protected characteristics. Plaintiff is informed and believes, and on that basis alleges, that Defendants shall dispute Plaintiff's contentions.

81. Pursuant to Code of Civil Procedure §1060, Plaintiff desires a judicial determination of Plaintiff's rights and duties, and a declaration that Defendants harassed Plaintiff on the basis of Plaintiff's sex, gender, engagement in protected activities, and/or some combination of these protected characteristics.

82. Pursuant to Code of Civil Procedure §1060, Plaintiff seeks a judicial determination of Plaintiff's rights and duties, and a declaration that Plaintiff's sex, gender, engagement in protected

-16-

COMPLAINT FOR DAMAGES

activities, and/or some combination of these protected characteristics was a substantial motivating factor in the decision to subject Plaintiff to the aforementioned adverse employment actions.

83. A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff, for Plaintiff and on behalf of employees in the State of California and in conformity with the public policy of the State, obtain a judicial declaration of the wrongdoing of Defendants and to condemn such discriminatory employment policies or practices prospectively. *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203.

84. A judicial declaration is necessary and appropriate at this time such that Defendants may also be aware of their obligations under the law to not engage in discriminatory practices and to not violate the law in the future.

85. Government Code §12965(b) provides that an aggrieved party, such as the Plaintiff herein, may be awarded reasonable attorney's fees and costs: "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees." Such fees and costs expended by an aggrieved party may be awarded for the purpose of redressing, preventing, or deterring discrimination and harassment.

## SIXTH CAUSE OF ACTION

## FOR RETALIATION

## IN VIOLATION OF LABOR CODE § 1102.5

## AGAINST ALL DEFENDANTS

86. Plaintiff re-alleges and incorporates by reference all Paragraphs, inclusive, as though set forth in full herein.

87. At all relevant times, Labor Code §1102.5(a) was in full force and effect, and was binding on Defendants. This law prohibits an employer, or any person acting on behalf of the employer, from discharging an employee or in any manner discriminating or retaliating against, or taking any adverse action against, an employee because, among other things, the employee disclosed information to a government or law enforcement agency, or to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation

-17-

COMPLAINT FOR DAMAGES

or noncompliance, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

88.    Plaintiff reported suspected violations of the law to Plaintiff's supervisors and human resources at CROZIER, specifically Defendants' suspected violations of the FEHA and equal pay laws.

89.    Defendants subjected Plaintiff to the adverse employment action, including without limitation, termination because Plaintiff reported the suspected violations of the FEHA and/or equal pay laws to Plaintiff's supervisors and human resources.

90.    Plaintiff's reports of these violations were a motivating and contributing factor for the adverse employment actions by Defendants against Plaintiff.

91.    Said conduct violates Labor Code §1102.5, and such violations were a proximate cause in Plaintiff's damages as hereinabove stated.

92.    The damage allegations of Paragraphs 31 through 34, inclusive, are herein incorporated by reference.

93.    As a result of Defendants' actions, Plaintiff is entitled to attorney's fees and costs.

94.    The foregoing conduct of Defendants individually, or by and through their managing agents, was intended by Defendants to cause injury to Plaintiff, or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights such as to constitute malice, oppression, or fraud under Civil Code §3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

## SEVENTH CAUSE OF ACTION

## FOR WRONGFUL TERMINATION

## IN VIOLATION THE PUBLIC POLICY OF THE STATE OF CALIFORNIA

## AGAINST ALL DEFENDANTS

95.    Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 94, inclusive, as though set forth in full herein.

-18-

COMPLAINT FOR DAMAGES

96.    At all relevant times mentioned in this complaint, the FEHA was in full force and effect and was binding on Defendants.  This law requires Defendants to refrain, among other things, from discriminating against any employee on the basis of sex or gender, and from retaliating against any employee who engages in protected activity.  At all times mentioned in this complaint, Article I, Section 8 of the California Constitution was in full force and effect and binding on Defendants.  This law requires Defendants to refrain from disqualifying a person from pursuing employment on the basis of sex.

97.    At all times mentioned in this complaint, it was a fundamental policy of the State of California that Defendants cannot discriminate and/or retaliate against any employee on the basis of sex and/or engagement in protected activity.

98.    Plaintiff believes and thereon alleges that Plaintiff's sex, gender, engagement in protected activity with respect to these protected classes, and/or some combination thereof, were factors in Defendants' conduct as alleged hereinabove.

99.    Such discrimination and retaliation, resulting in the wrongful termination of Plaintiff's employment on the basis of sex, gender, Plaintiff's complaining of harassment and discrimination due to these protected classes, Plaintiff's engagement in protected activity, and/or some combination of these factors, were a proximate cause in Plaintiff's damages as stated below.

100.    The above said acts of Defendants constitute violations of the Government Code and the public policy of the State of California embodied therein as set forth above.  Defendants violated these laws by discriminating and retaliating against Plaintiff and terminating Plaintiff's employment in retaliation for exercise of protected rights.

101.    At all relevant times mentioned in this complaint, Labor Code §1102.5 was in full force and effect and was binding upon Defendants and each of them.  This law prohibits retaliation against employees who disclose reasonable suspicions of illegal activity or conduct by their employer to a government or law enforcement agency, or to employer itself.   Labor Code §1102.5 reflects the State's broad public policy interest in encouraging workplace "whistleblowers," who may without fear of retaliation report concerns regarding an employer's suspected illegal conduct, irrespective of whether the reporting is made to governmental agencies or to the employer itself, and irrespective of

-19-

COMPLAINT FOR DAMAGES

whether the employee's suspicions are correct that the challenged conduct actually violates some law. Indeed, the law in California is that an employee's good faith but mistaken belief in the illegality of his co-workers', supervisor's, and employer's conduct is protected from employer retaliation in the whistle-blowing context.

102.    Plaintiff is informed and believes, and based thereupon alleges, that Plaintiff's engagement in protected activities under Labor Code § 1102.5 was a proximate cause in Plaintiff's damages as stated below.

103.    The damage allegations of Paragraphs 31 through 34, inclusive, are herein incorporated by reference.

104.    The foregoing conduct of Defendants individually, or by and through their officers, directors and/or managing agents, was intended by the Defendants to cause injury to the Plaintiff or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights such as to constitute malice, oppression, or fraud under Civil Code §3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks judgment against Defendants and each of them, in an amount according to proof but estimated to be no less than $1,000,000 as follows:

1.    For a money judgment representing compensatory damages including lost wages, earnings, commissions, retirement benefits, and other employee benefits, and all other sums of money, together with interest on these amounts; for other special damages; and for general damages for mental pain and anguish and emotional distress and loss of earning capacity;

2.    For prejudgment interest on each of the foregoing at the legal rate from the date the obligation became due through the date of judgment in this matter.

**WHEREFORE**, Plaintiff further seeks judgment against Defendants, and each of them, in an amount according to proof, as follows:

-20-

COMPLAINT FOR DAMAGES

3.     For a declaratory judgment reaffirming Plaintiff's equal standing under the law and condemning Defendants' discriminatory practices;

4.     For injunctive relief barring Defendants' discriminatory employment policies and practices in the future, and restoring Plaintiff to Plaintiff's former position with Defendants;

5.     For punitive damages, pursuant to Civil Code §§3294 in  amounts sufficient to punish Defendants for the wrongful conduct alleged herein and to deter such conduct in the future;

6.     For costs of suit, attorneys' fees, and expert witness fees pursuant to the FEHA, Labor Code and/or any other basis;

7.     For post-judgment interest; and

8.     For any other relief that is just and proper.

DATED: March 20, 2026                    **LAW OFFICES OF CHRISTINA M. COLEMAN**
                                         **A PROFESSIONAL CORPORATION**



                                         By: _____
                                              Christina M. Coleman, Esq.
                                              Attorney for Plaintiff
                                              APRIL Y. WALKER


                              **JURY TRIAL DEMANDED**

Plaintiff demands trial of all issues by jury.

DATED: March 20, 2026                    **LAW OFFICES OF CHRISTINA M. COLEMAN**
                                         **A PROFESSIONAL CORPORATION**



                                         By: _____
                                              Christina M. Coleman, Esq.
                                              Attorney for Plaintiff
                                              APRIL Y. WALKER

-21-

COMPLAINT FOR DAMAGES

# EXHIBIT B

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| Christina M. Coleman  (SBN 192578)<br>Law Offices of Christina M. Coleman, APC<br>113 N. San Vicente Blvd., Suite 341<br>Beverly Hills, CA  90211<br>TELEPHONE NO.: (323) 592-3605    FAX NO. *(Optional):* (323) 843-1715<br>E–MAIL ADDRESS *(Optional):* christina@christinacolemanlaw.com<br>ATTORNEY FOR *(Name):* Plaintiff  April Y. Walker | **Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>3/24/2026 9:07 AM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By M. Saxon, Deputy Clerk** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
STREET ADDRESS: 111 N Hill Street
MAILING ADDRESS: 111 N Hill Street
CITY AND ZIP CODE: Los Angeles, CA  90012
BRANCH NAME: Stanley Mosk Courthouse

| PLAINTIFF/PETITIONER:  April Y. Walker | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  Iron Mountain Information Management | 26STCV09041 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1.  At the time of service I was at least 18 years of age and not a party to this action.

2.  I served copies of:

    a.  [✓]  summons

    b.  [✓]  complaint

    c.  [✓]  Alternative Dispute Resolution (ADR) package

    d.  [ ]  Civil Case Cover Sheet *(served in complex cases only)*

    e.  [ ]  cross-complaint

    f.  [✓]  other *(specify documents):*  Notice of Case Assignment; Notice of Case Management Conference

3.  a.  Party served *(specify name of party as shown on documents served):*

    IRON MOUNTAIN INFORMATION MANAGEMENT, LLC, a Delaware limited liability company d/b/a CROZIER FINE ARTS

    b.  [✓]  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

    Mr. William Meaney, President & CEO

4.  Address where the party was served:
    85 New Hampshire Ave Suite 150, Portsmouth, NH 03801

5.  I served the party *(check proper box)*

    a.  [ ]  **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party  (1) on *(date):*            (2) at *(time):*

    b.  [ ]  **by substituted service.**  On *(date):*            at *(time):*            I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

        (1)  [ ]  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

        (2)  [ ]  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

        (3)  [ ]  **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him or her of the general nature of the papers.

        (4)  [ ]  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*            from *(city):*            **or** [ ] a declaration of mailing is attached.

        (5)  [ ]  I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|

| PLAINTIFF/PETITIONER: April Y. Walker | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Iron Mountain Information Management | 26STCV09041 |

5.  c.  ☑  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):* March 20, 2026        (2)  from *(city):* Los Angeles

    (3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4)  ☑  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section):*

    ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
  a.  ☐  as an individual defendant.
  b.  ☐  as the person sued under the fictitious name of *(specify):*
  c.  ☐  as occupant.
  d.  ☑  On behalf of *(specify):*  Iron Mountain Information Management, LLC d/b/a Crozier Fine Arts
    under the following Code of Civil Procedure section:

    ☑  416.10 (corporation)          ☐  415.95 (business organization, form unknown)
    ☐  416.20 (defunct corporation)      ☐  416.60 (minor)
    ☐  416.30 (joint stock company/association)    ☐  416.70 (ward or conservatee)
    ☐  416.40 (association or partnership)     ☐  416.90 (authorized person)
    ☐  416.50 (public entity)           ☐  415.46 (occupant)
                               ☐  other:

7.  **Person who served papers**
  a.  Name:  Christina M. Coleman, Esq.
  b.  Address:  113 N. San Vicente Blvd., Suite 341, Beverly Hills, CA  90211
  c.  Telephone number:  (323) 592-3605
  d.  **The fee** for service was: $ 12.27
  e.  I am:

    (1)  ☐  not a registered California process server.
    (2)  ☑  exempt from registration under Business and Professions Code section 22350(b).
    (3)  ☐  a registered California process server:
       (i)  ☐  owner  ☐  employee  ☐  independent contractor.
       (ii)  Registration No.:
       (iii)  County:

8.  ☑  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: March 24, 2026

Christina M. Coleman
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE )

Law Offices of Christina M. Coleman, APC
113 N San Vicente Blvd, Suite 341
Beverly Hlills CA 90211

**$11.12   US POSTAGE**
**FIRST-CLASS IMI**
Mar 20 2026
Mailed from ZIP 90211
6 OZ FIRST-CLASS MAIL FLATS RATE
ZONE 8

11923275



063S0010937442

**USPS CERTIFIED MAIL**



**9414 8118 9876 5433 8066 43**

Mr. William Meaney, President & CEO
Iron Mountain Information Management, LLC
85 New Hampshire Ave Suite 150
Porsmouth NH 03801

## Electronic Delivery Confirmation™





Law Offices of Christina M. Coleman, APC
113 N San Vicente Blvd, Suite 341
Beverly Hlills CA 90211

$11.12   US POSTAGE
FIRST-CLASS IMI
Mar 20 2026
Mailed from ZIP 90211
6 OZ FIRST-CLASS MAIL FLATS RATE
ZONE 8
11923275

063S0010937442

**USPS CERTIFIED MAIL**

**9414 8118 9876 5433 8066 43**

Mr. William Meaney, President & CEO
Iron Mountain Information Management, LLC
85 New Hampshire Ave Suite 150
Porsmouth NH 03801

| Reference | File No. 290 |
|---|---|
| USPS # | 9414811898765433806643 |
| USPS Mail Class | Certified with Return Receipt (Signature) |
| USPS Status | Your item was delivered to an individual at the address at 10:39 am on March 24, 2026 in PORTSMOUTH, NH 03801. |
| USPS History | Delivered, Left with Individual, PORTSMOUTH, NH 03801, March 24, 2026, 10:39 am |
| | Arrived at USPS Facility, MANCHESTER, NH 03103, March 23, 2026, 9:15 am |
| | Arrived at USPS Facility, LOS ANGELES CA DISTRIBUTION CENTER, March 20, 2026, 9:18 pm |
| | Accepted at USPS Facility, LOS ANGELES CA DISTRIBUTION CENTER, March 20, 2026, 8:18 pm |
| | Shipping Label Created, BEVERLY HILLS, CA 90211, March 20, 2026, 5:17 pm |

**Electronic Delivery Confirmation Report © 2026 Certified Mail Envelopes, Inc. All rights reserved.**
Delivery data for this mailing was provided and officially recorded by the United States Postal Service®. Copies of this delivery record are available at www.USPS.com.  Certified Mail® is a registered trademark of the United States Postal Service. All rights reserved.
Letter production and report formatting were completed by Certified Mail Envelopes, Inc., doing business as www.CertifiedMailLabels.com and www.SendCertifiedMail.com.
**Date Verified: 03/24/2026 (UTC)**


**UNITED STATES**
**POSTAL SERVICE**

March 24, 2026

Dear Reference  File No 290:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9414 8118 9876 5433 8066 43**.

| Item Details | |
| --- | --- |
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | March 24, 2026, 10:39 am |
| **Location:** | PORTSMOUTH, NH 03801 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| **Recipient Name:** | Iron Mountain Information Management  LLC Mr  Wi |

| Recipient Signature | |
| --- | --- |
| Signature of Recipient: | |
| Address of Recipient: | |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

# EXHIBIT C

Case 2:26-cv-04518-CAS-SSC    Document 1-2    Filed 04/28/26    Page 33 of 71    Page ID #:52

**43 Trials Digest 16th 11, 2013 WL 5820140 (Cal.Super.) (Verdict and Settlement Summary)**

Copyright (c) 2026 Thomson Reuters/West
Superior Court, Los Angeles County, California.

Silverman vs. Stuart F. Cooper Inc.

**TOPIC:**

Synopsis: Terminated employee claims age discrimination

Case Type: Labor & Employment; Discrimination; Labor & Employment; Age; Labor & Employment; Harassment-General; Labor & Employment; Termination/Constructive Discharge

DOCKET NUMBER: BC467464

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: July 19, 2013

JUDGE: Deirdre H. Hill
**ATTORNEYS:**

Plaintiff: Allen J. Beck, Gleason & Favarote, Los Angeles; Paul M. Gleason, Gleason & Favarote, Los Angeles; Janet S. Yavrouian, Gleason & Favarote, Los Angeles.
Defendant: Charles J. Schufreider, Barton, Klugman & Oetting, Los Angeles.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $325,223

Range: $200,000-499,999
$133,222 to plaintiff for past loss of earnings

$40,668 to plaintiff for future loss of earnings

$116,333 to plaintiff for past emotional distress

$35,000 to plaintiff for future emotional distress

The jury found defendants Stuart F. Cooper Inc. or Burdge Cooper Inc. acted with oppression, fraud or malice but declined to award punitive damages.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

Silverman vs. Stuart F. Cooper Inc., 43 Trials Digest 16th 11 (2013)

**EXPERTS:**

Plaintiff: Not reported.

Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

According to court records: Plaintiff Joe Silverman was hired by defendant Stuart F. Cooper Inc. in 1994 as a salesman. Plaintiff said he was compensated with a base salary, commission, expense reimbursement and medical benefits, regardless of sales performance. Plaintiff said his sale performance fluctuated, but he was never subjected to discipline, and he achieved an acceptable sales record. In August 2009, plaintiff was reportedly demoted by defendant David Overgaar, defendant Stuart Cooper's president, without warning and his compensation package was changed. His compensation change converted him to 100 percent commission and limited his automobile reimbursement to $200 per month. Plaintiff said the company had never forced such a compensation package on any other employee. The new package also established a sales quota for plaintiff in order to return to his prior compensation plan. He said he was required to have sales of at least $90,000 over a six-month period with no single job accounting for more than 30 percent of sales. This quota was unprecedented and never applied to other sales employees, plaintiff claimed.

In November 2009, another sales representative, 49, was allegedly hired with a salary plus commissions compensation package.

In October 2010 plaintiff, 76, apparently filed a claim for age discrimination with the Department of Fair Employment and Housing based on the demotion and his change in compensation. Within six months of his complaint, plaintiff said, plaintiff was terminated by defendant Burdge Cooper Inc. for the pretextual reason of "poor attitude."

Plaintiff alleged age discrimination in violation of the Fair Employment and Housing Act and public policy, unlawful retaliation in violation of the FEHA, age harassment in violation of the FEHA, failure to prevent discrimination and harassment in violation of the FEHA, wrongful termination in violation of public policy and failure to pay final wages and waiting time penalties.

**CLAIMED INJURIES**

According to court records:

Emotional distress.

**CLAIMED DAMAGES**

According to court records:

Not reported.

**SETTLEMENT DISCUSSIONS**

According to court records:

Not reported.

**COMMENTS**

According to court records:

The complaint was filed Aug. 12, 2011.

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:26-cv-04518-CAS-SSC    Document 1-2    Filed 04/28/26    Page 35 of 71    Page ID #:54

Trials Digest, A Thomson Reuters/West business
Los Angeles County Superior Court/Downtown

---

**End of Document**                                   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

## JVR No. 1402210041, 2013 WL 7852947 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2026 Thomson Reuters/West

Superior Court, Los Angeles County, California.

## VASQUEZ v. LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY

BC484335
DATE OF FILING: October 25, 2012
DATE OF TRIAL/SETTLEMENT: November 12, 2013

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $1,904,635**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**Related Court Documents:**
Plaintiff's second amended complaint: 2012 WL 10007313

Defendant's trial brief: 2013 WL 6506751

Verdict form: 2013 WL 6506795

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Scott O. Cummings, Cummings & Franck P.C., Gardena, CA
Plaintiff: Lee Franck, Cummings & Franck P.C., Gardena, CA
Defendant: Calvin R. House, Gutierrez Preciado & House L.L.P., Pasadena, CA
Defendant: Caroline Shahinian, Gutierrez, Preciado & House L.L.P., Pasadena, CA

JUDGE: Kevin C. Brazile

RANGE AMOUNT: $1,000,000 - 1,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: M

Age: Adult

General Occupation: General Laborer

**DEFENDANT:**
Sex: O

Organization Type: Los Angeles County Metropolitan Transportation Authority

**DAMAGES:**
Compensatory Pain & Suffering: $1,250,000

Compensatory Future Medical: $185,000

Compensatory Past Wages: $84,348

Compensatory Future Wages: $385,287

Total Compensatory Award: $1,904,635

Punitive Damages: $0

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: true

Failure Grant Leave: true

Failure Hire: true

Failure Promote: false

Suspension: true

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: true

Restrictions: false

Termination: true

**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State

**Primary General Statute**
**Primary Name: Disability Discrimination**
Primary General Statute Discrimination: true

Specific Statute: State

**General Statute: Family and Medical Leave**
General Statute Discrimination: false

Specific Statute: General

**WESTLAW**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**General Statute: Retaliation**
General Statute Discrimination: false

Comparative Negligence Percentage: 0


**FACTS:**
Raphael Vasquez, a former bus driver, sued the Los Angeles County Metropolitan Transportation Authority for disability discrimination, failure to accommodate, failure to engage in the interactive process, in violation of the Americans with Disabilities Act (ADA), and interference with the Family and Medical Leave Act (FMLA) and the California Family Rights Act (CFRA), and retaliation in violation of the Fair Employment and Housing Act (FEHA) Cal. Gov't. Code Secs. 12940 et seq. The plaintiff alleged during his employment, he suffered from a variety of disabilities, including but not limited to gout, cataracts, blurry vision, diabetes, for which he treated with doctors, and in January 2010, he requested a medical leave of absence for hip replacement surgery due to Avascular Necrosis of the femur, which the defendant admitted he was eligible for, and he provided the necessary documentation indicating he would be out for approximately five months. He asserted following the surgery, his doctor provided a note that he was unable to work until June 1, 2010 due to Trochanteric Bursitis, and aftercare from his hip replacement, thereafter, he was cleared to return to work. Vazquez claimed in November 2010, he had cataract surgery, but the defendant began to use his disabilities for adverse actions, including discipline and suspensions, and in January 2011, he was terminated, and the proffered reason for his termination was his attendance. He asserted the defendant failed to engage in a timely, good faith, interactive process to determine the most effective reasonable accommodations for him, discouraged the use of FMLA leave, which violated the CFRA, and that his disability, his request for and/or taking medical leave were substantial motivating factors in the decision to terminate him. The defendant denied the allegations and contended the plaintiff was charged with excessive absenteeism after accumulating eight absences within a 12-month period, and at his discharge hearing he told the hearing officer he was in perfect health, but that he had treated some medical conditions. The defendant argued that the officer had no reason to believe the plaintiff might be disabled, and terminated him for violating it's attendance policy.


Jury Verdict Research
COURT: Superior

---

**End of Document**                                  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**JVR No. 1403200023, 2013 WL 8115991 (Cal.Super.) (Verdict and Settlement Summary)**

Copyright (c) 2026 Thomson Reuters/West
Superior Court, Los Angeles County, California.

ABOULAFIA v. GACN INC. D/B/A CABLE'S RESTAURANT

BC469940
DATE OF FILING: September 23, 2011
DATE OF TRIAL/SETTLEMENT: December 17, 2013

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $5,681,682**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**Related Court Documents:**
Plaintiffs' complaint: 2011 WL 6463766

Verdict form: 2013 WL 6870002

Verdict form (punitive damages): 2013 WL 6869977

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: James R. Rosen, Rosen Saba LLP, Beverly Hills, CA
Plaintiff: Elizabeth L. Bradley, Rosen Saba LLP, Beverly Hills, CA
Plaintiff: Jonathan S. Dennis, Rosen Saba LLP, Beverly Hills, CA
Defendant: Eric J. Erickson, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA
Defendant: Christopher M. Habashy, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA
Defendant: Marie Dominguez-Gasson, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA

JUDGE: Yvette Palazuelos

RANGE AMOUNT: $5,000,000 - 999,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: **Martha Aboulafia**: F

Age: Adult, 58

General Occupation: Food Service Worker

Sex: Cheryl B. Colgin: F

Age: Adult, 58

General Occupation: Food Service Worker

Sex: Patricia Monica: F

Age: Adult, 67

General Occupation: Food Service Worker

Sex: Regina Greene: F

Age: Adult, 46

General Occupation: Food Service Worker

**DEFENDANT:**
Sex: O

General Occupation: Restaurant, Nightclub or Tavern

Organization Type: GACN Inc. d/b/a Cable's Restaurant

**DAMAGES:**
Compensatory Pain & Suffering: **Martha Aboulafia**: $250,000

Compensatory Past Wages: **Martha Aboulafia**: $58,164

Compensatory Future Wages: **Martha Aboulafia**: $53,592

Total Compensatory Award: **Martha Aboulafia**: $361,756

Compensatory Pain & Suffering: Cheryl B. Colgin: $250,000

Compensatory Past Wages: Cheryl B. Colgin: $66,262

Compensatory Future Wages: Cheryl B. Colgin: $131,372

Total Compensatory Award: Cheryl B. Colgin: $447,634

Compensatory Pain & Suffering: Patricia Monica: $250,000

Compensatory Past Wages: Patricia Monica: $95,588

Compensatory Future Wages: Patricia Monica: $157,486

ABOULAFIA V. GACN INC. D/B/A CABLE'S RESTAURANT, JVR No. 1403200023 (2013)

Total Compensatory Award: Patricia Monica: $503,074

Compensatory Pain & Suffering: Regina Greene: $250,267

Compensatory Past Wages: Regina Greene: $56,613

Compensatory Future Wages: Regina Greene: $62,338

Total Compensatory Award: Regina Greene: $369,218

Punitive Damages: $1,000,000

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**

Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**Entity Type: Service/Retail Company**
**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
**Primary Name: Age Discrimination**
Primary General Statute Discrimination: true

Specific Statute: General


**General Statute: Wrongful Termination**
General Statute Discrimination: false

Comparative Negligence Percentage: 0


**FACTS:**
58-year-old <mark>Martha Aboulafia</mark>, 58-year-old Cheryl B. Colgin, 46-year-old Regina Greene, and 67-year-old Patricia Monica, formerly employed as servers, sued GACN Inc. d/b/a Cable's Restaurant, for age discrimination, wrongful termination, in violation of California's public policy, and failure to provide rest periods and/or 30 minute meal periods, pursuant to Cal. Lab. Code Sec. 226.7. The plaintiffs claimed during their employment, they were never the subject of any negative reviews or

disciplinary actions until the restaurant came under new ownership, thereafter, they experienced negative treatment, a reduction in hours, and sudden complaints about job performance. They alleged after the transfer of ownership, suddenly they were systematically harassed, wrongfully terminated, and were replaced by younger female servers. Aboulafia, who worked for the defendant for more than 17 years, contended after the transfer of ownership, two days later she was terminated allegedly because business was slow, and she was told that an unidentified customer had complained about her. Colgin, who worked for the restaurant for more than 14 years, alleged she was also told two days after the transfer that she was no longer needed, but the manager called her again 10 minutes later, and fired her a second time, likely not remembering he had terminated her minutes earlier. Greene, who worked for the restaurant for three years, claimed that after the transfer, she was instructed to train newly hired younger female employees, but seven months later her manager falsely accused her of being under the influence of drugs and/or alcohol, terminated her, and subsequently falsely reported to the California Employment Development Department that she had voluntarily resigned in its attempt to avoid paying her unemployment benefits. Monica, who was employed for 13 years, asserted she was terminated two days after the transfer purportedly because her services were no longer needed, and business was slow. The defendant denied the allegations and contended it used nondiscriminatory factors to facilitate the layoffs, including identifying servers with flexible schedules and a willingness to work with all customers, and that it retained 11 servers employed by former management, and eight of those servers were within the protected class, ranging from 45 to 75 years old. The defendant also claimed the plaintiffs were allowed to take appropriate rest breaks. The jury awarded Aboulafia $1,361,756, Colgin $1,447,634, and Monica $1,503,074 for their age discrimination claims, and Greene's award included $952 for missed rest periods for a total award of $1,369,218.


Jury Verdict Research
COURT: Superior

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:26-cv-04518-CAS-SSC    Document 1-2    Filed 04/28/26    Page 45 of 71    Page
ID #:64

Ward vs. Cadbury Schweppes Bottling Group, 10 Trials Digest 15th 7 (2011)

**10 Trials Digest 15th 7, 2011 WL 7447633 (C.D.Cal.) (Verdict and Settlement Summary)**

Copyright (c) 2026 Thomson Reuters/West

United States District Court, C.D. California, Western Division.

Ward vs. Cadbury Schweppes Bottling Group

**TOPIC:**

Synopsis: Truck drivers claim age discrimination resulted in constructive discharge

Case Type: Labor & Employment; Age; Labor & Employment; Termination/Constructive Discharge

DOCKET NUMBER: 09CV03279(DMG)

STATE: California
COUNTY: Not Applicable

Verdict/Judgment Date: December 7, 2011

JUDGE: Dolly M. Gee
**ATTORNEYS:**
Plaintiff: Michael F. Baltaxe, Law Offices of Michael F. Baltaxe, Westlake Village; Wendy K. Marcus, Law Offices of Timothy B. Sottile, Westlake Village; Timothy B. Sottile, Law Offices of Timothy B. Sottile, Westlake Village.
Defendant: Daryl M. Crone, Crone Hawxhurst, Los Angeles; Joshua Paul Gelbart, Crone Hawxhurst, Los Angeles; Gerald E. Hawxhurst, Crone Hawxhurst, Los Angeles; Diyari Vazquez, Crone Hawxhurst, Los Angeles.

**SUMMARY:**
Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $17,899,400

Range: $5,000,000-999,999,999
Plaintiff Ward: $133,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $350,000 for past and future physical impairment, including psyche, hypertension, stomach, sleeplessness, anxiety, and chest pain; $1,800,000 punitive damages. Plaintiff Jones: $44,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $1,214,000 punitive damages. Plaintiff Suhay: $71,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including hernia and shoulder surgeries; $1,542,000 punitive damages. Plaintiff Valadez: $130,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $500,000 past and future physical impairment, including right knee surgery; $2,043,000 punitive damages. Plaintiff Talton: $144,000 past income; $500,000 past and future medical expenses; $800,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including back and stress; $1,753,000 punitive damages. Plaintiff January: $140,000 past income; $800,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including shoulder stress and strain; $1,335,400 punitive damages.

Trial Type: Jury

Trial Length: 13 days.

Deliberations: 1 day.

Jury Poll: Not reported.

**EXPERTS:**

Plaintiff: Jeff Nelken B.S., M.A., R.D., food safety, Woodland Hills, (310) 273-5492.; Karen Lynn Smith, M.A., economist, Adams Smith Economics, San Marino, (626) 796-4040.
Defendant: Not reported.

**TEXT:**

CASE INFORMATION

**FACTS/CONTENTIONS**

According to court records: Plaintiffs Robert M. Ward, Robert E. Jones, Jose M. Valadez, Leonard Talton, Gary Suhay, and Alfonso W. January were employed by defendants Cadbury Schweppes Bottling Group, Cadbury Schweppes Holdings Inc., 7-Up/RC Bottling Company of Southern California, Dr. Pepper Snapple Group, and American Bottling Company.
Plaintiffs alleged defendants, through upper management, implemented and enforced an unwritten policy of discrimination against older employees, including plaintiffs. Plaintiffs claimed defendants assigned the older truck drivers more difficult and physically taxing routes so they would quit or become injured, transferred the older forklift operators to more difficult and strenuous duties so that they would quit or become injured, piled work on plaintiffs so that they would quit or become injured, and wrote some plaintiffs up for frivolous and pre-textual reasons.
Plaintiffs alleged discrimination based on age, failure to prevent discrimination or retaliation, constructive discharge in violation of public policy, failure to engage in good-faith interactive process, and failure to accommodate.

**CLAIMED INJURIES**

According to court records:
Hypertension; stomach; sleeplessness; anxiety; chest pain; hernia; shoulder; knee; anxiety; emotional distress; back.

**CLAIMED DAMAGES**

According to court records:
Not reported.

**SETTLEMENT DISCUSSIONS**

According to court records:

Not reported.

**COMMENTS**

According to court records:

The complaint was filed in Los Angeles Superior Court, case number BC410112. It was removed to federal court on May 8, 2009.

Case 2:26-cv-04518-CAS-SSC    Document 1-2    Filed 04/28/26    Page 47 of 71   Page ID #:66

Ward vs. Cadbury Schweppes Bottling Group, 10 Trials Digest 15th 7 (2011)

Trials Digest, A Thomson Reuters/West business
Central District Federal Court/Los Angeles

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**JVR No. 1105250063, 2011 WL 3293268 (Cal.Super.) (Verdict and Settlement Summary)**

Copyright (c) 2026 Thomson Reuters/West
Superior Court, Los Angeles County, California.

WELCH v. IVY HILL CORP.

BC414667
DATE OF TRIAL: March 08, 2011

TOPIC:

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total Verdict: $1,270,000**
**Judge Reduced Award To:**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Carney R. Shegerian, Santa Monica, CA
Defendant: Kelly O. Scott, Beverly Hills, CA
Karina B. Sterman, Beverly Hills, CA
Jennifer S. Grock, Beverly HIlls, CA

JUDGE: Not Available

RANGE AMOUNT: $1,000,000 - 1,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Female

Age: Adult, 62

**DECEDENT:**
**DEFENDANT:**
Sex: Organization

Inactive Defendant (for organization): Ivy Hill Corp.

Policy Limit:

Other Expenses: $0

**ENTITY TYPE: General Business Entity**
**DAMAGES:**
Compensatory Past Medical Award: $0

Compensatory Future Medical Award: $0

Compensatory Past Wages Award: $0

Compensatory Future Wages Award: $0

Compensatory Pain And Suffering Award: $1,270,000

Other Compensatory Award: $0

Total Compensatory Award: $1,270,000

Punitive Damages: $0

Hedonic Damages: $0

Property Damages: $0

Other Damages: $0

Interest: $0

Loss of Service: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

**WESTLAW** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
Primary Name: Age Discrimination


Primary general Statute Discrimination: true


Comparative Negligence Percentage: 0


**FACTS:**
A 62-year-old former account executive sued the defendant company claiming age discrimination in violation of state law. The plaintiff alleged that the defendant wrongfully terminated her due to her age, that her most profitable accounts were taken

Case 2:26-cv-04518-CAS-SSC    Document 1-2    Filed 04/28/26    Page 51 of 71    Page
ID #:70

rom her, and that she was harassed by her supervisor. The defendant denied the allegations and claimed that the plaintiff was terminated due to a shutdown after the company was sold, and that it was the decision of the acquiring company as to whom it would hire. The defendant further contended that the plaintiff's most profitable account was taken from her t the request of the client.

Jury Verdict Research
COURT: Superior

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

## JVR No. 1104250047, 2011 WL 2912831 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2026 Thomson Reuters/West
Superior Court, Orange County, California.

LIEMANDT v. MEGA RV CORP.

30-2010-00388086
DATE OF TRIAL: February 04, 2011

TOPIC:

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total Verdict: $435,000**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: John A. Belcher, Pasadena, CA
Jeremy Golan, Los Angeles, CA
Defendant: William J. Tebbe, Los Angeles, CA
Adam K. Obeid, Irvine, CA

JUDGE: Not Available

RANGE AMOUNT: $200,000 - 499,999

STATE: California
COUNTY: Orange

**SUMMARY**
**PLAINTIFF:**
Sex: Male

Age: Adult, 68

**DECEDENT:**
**DEFENDANT:**
Sex: Organization

Inactive Defendant (for organization): Mega RV Corp.

Policy Limit:

Other Expenses: $0

**ENTITY TYPE: General Business Entity**

**DAMAGES:**

Compensatory Past Medical Award: $0

Compensatory Future Medical Award: $0

Compensatory Past Wages Award: $0

Compensatory Future Wages Award: $0

Compensatory Pain And Suffering Award: $385,000

Other Compensatory Award: $0

Total Compensatory Award: $385,000

Punitive Damages: $50,000

Hedonic Damages: $0

Property Damages: $0

Other Damages: $0

Interest: $0

Loss of Service: $0

**ADVERSE ACTION**

Closer Supervision: false

Constructive Discharge: false

Demotion: true

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: false

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true

**STATUTES**
**Primary Specific Statute**
Primary Name: State

**Primary General Statute**
Primary Name: Age Discrimination

Primary general Statute Discrimination: true

Comparative Negligence Percentage: 0

**FACTS:**
A 68-year-old salesman sued the defendant claiming age discrimination in violation of state law. The plaintiff contended that the defendant wrongfully terminated him due to his age after it demoted him from his management position to a sales position on his return to work after suffering a massive heart attack. The defendant denied the allegations and claimed that the plaintiff

was fired for poor performance and insubordination. It further claimed that more than 70 percent of its employees were more than 50-years-old.

Jury Verdict Research
COURT: Superior

---

**End of Document**                               © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Peacock vs. Quest Diagnostics, 27 Trials Digest 14th 10 (2010)

Case 2:26-cv-04518-CAS-SSC    Document 1-2    Filed 04/28/26    Page 56 of 71    Page ID #:75

**27 Trials Digest 14th 10, 2010 WL 6806990 (C.D.Cal.) (Verdict and Settlement Summary)**

Copyright (c) 2026 Thomson Reuters/West

United States District Court, C.D. California, Western Division.

Peacock vs. Quest Diagnostics

**TOPIC:**

Synopsis: Employee alleges discriminatory termination in violation of CFRA

Case Type: Labor & Employment; Discrimination; Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Violation of Public Policy; Labor & Employment; Family & Medical Leave; Labor & Employment; Disability/ Medical Condition; Labor & Employment; Retaliation

DOCKET NUMBER: 09CV09206(JHN)

STATE: California
COUNTY: Not Applicable

Verdict/Judgment Date: December 15, 2010

JUDGE: Jacqueline H. Nguyen

**ATTORNEYS:**

Plaintiff: Christopher B. Adamson, Lavi & Ebrahimian, Los Angeles; Joseph Lavi, Lavi & Ebrahimian, Los Angeles.

Defendant: Deanna L. Ballesteros, Epstein, Becker & Green, Los Angeles; David Jacobs, Epstein, Becker & Green, Los Angeles.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $229,638

Range: $200,000-499,999
$71,138 past economic; $8,500 future economic; $150,000 past non-economic.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**

Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

Case 2:26-cv-04518-CAS-SSC    Document 1-2    Filed 04/28/26    Page 57 of 71    Page ID #:76

Peacock vs. Quest Diagnostics, 27 Trials Digest 14th 10 (2010)

According to court records: Plaintiff Janeen A. Peacock was an employee of defendant Quest Diagnostics, working as a Specimen Tech II from February 2003 until approximately January 16, 2008, when she was wrongfully terminated. In the later part of 2007, plaintiff's Manager and/or Supervisor, Raymond Candeleria, started causing plaintiff severe emotional distress and depression, which manifested itself in panic attacks which were witnessed by Candeleria. Plaintiff informed Candeleria that she had been under a lot of stress at work and that was the reason for her panic attacks, which, over the months, started to increase in frequency and/or duration.

In early January 2008, plaintiff had an outburst at work in front of Candeleria. Plaintiff started crying uncontrollably in front of Candeleria and told him that her outburst was due to severe distress at work.

On January 16, 2008, plaintiff checked herself into Northridge Hospital's Emergency Room due to severe depression. On January 17, 2008, plaintiff informed defendant's Human Resources that she had been admitted into hospital for severe depression and that she had been taken off work. Plaintiff was released on January 21, 2008 and was placed on disability by her treating physician until February 5, 2008. Upon release from the hospital, plaintiff informed defendant of her disability and mailed a copy of her doctor's note placing her off work and on disability.

On January 22, 2008, plaintiff contacted defendant's Benefit Department and informed them that she had to receive psychological treatment and group therapy from January 22, 2008 to February 1, 2008. She was informed that that was okay and that defendant would follow up with plaintiff in a few days.

On February 1, 2008, plaintiff was informed by her treating physician that her insurance had been canceled. Plaintiff contacted Human Resources to find out why and was told that they did not know why.

On February 1, 2008, plaintiff received a letter dated January 31, 2008, stating that defendant had terminated plaintiff's employment for job abandonment.

Plaintiff filed suit for Discriminatory Termination in Violation of the California Family Rights Act, California Government Code § 12945.2; Violation of the California Family Rights Act, California Government Code § 12945.2(a), Interfering with the Rights and Refusing an Employee's Request for a CFRA Medical Leave; Retaliatory Termination in Violation of the California Family Rights Act, California Government Code § 12945.2, for Requesting and Going on a Medical Leave; Tortious Termination and Discrimination in Violation of Public Policy; Disability Discrimination in Violation of FEHA; Discrimination Based on Perceived Disability in Violation of FEHA; Disability Discrimination in Violation of FEHA, Failure to Provide Reasonable Accommodation; Disability Discrimination in Violation of FEHA, Failure to Engage in Interactive Process; Retaliatory Termination in Violation of FEHA for Requesting a Reasonable Accommodation; Tortious Termination and Discrimination in Violation of Public Policy Based on FEHA; and Tortious Termination, Discrimination, and Failure to Hire in Violation of Public Policy for the Right to File a Workers' Compensation Claim due to Work Related Injury.

**CLAIMED INJURIES**
  NA

**CLAIMED DAMAGES**
  According to court records:
  Not reported.

**SETTLEMENT DISCUSSIONS**
According to court records:

Not reported.

**COMMENTS**
According to court records:

Case 2:26-cv-04518-CAS-SSC    Document 1-2    Filed 04/28/26    Page 58 of 71   Page
ID #:77

**Peacock vs. Quest Diagnostics, 27 Trials Digest 14th 10 (2010)**

The complaint was filed on October 29, 2009.


Trials Digest, A Thomson Reuters/West business
Central District Federal Court/Los Angeles

---

**End of Document**                          © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT D

Case 2:26-cv-04518-CAS-SSC   Document 1-2   Filed 04/28/26   Page 60 of 71   Page ID #:79

Galt G/S v. JSS Scandinavia, 142 F.3d 1150 (1998)
1999 A.M.C. 608, 40 Fed.R.Serv.3d 1219, 98 Cal. Daily Op. Serv. 3108...

KeyCite Yellow Flag

Declined to Extend by   MSC Mediterranean Shipping Company S.A. v. BNSF Railway Company,   C.D.Cal.,   March 31, 2025

142 F.3d 1150
United States Court of Appeals,
Ninth Circuit.

GALT G/S, Plaintiff/Appellee,

v.

JSS SCANDINAVIA, Defendant/
Cross-defendant/Appellee,

D & D Services, Defendant/Cross-
defendant/ Cross-claimant/Appellee,

CRYSTAL ICE & COLD STORAGE CO.,
Defendant/Cross-claim third-party plaintiff/Appellee,

v.

SAFEWAY STORES INC., Third-party
defendant/ Cross-claimant/ Appellant,

v.

BUYERS REFRIGERATED TRUCK SERVICE
OF SACRAMENTO, Cross-defendant/Appellee,

Can Transport, Inc., Defendant/Cross-
defendant Third-party plaintiff/Appellee,

North America Services, Defendant/Cross-
defendant Third-party plaintiff/Appellee,

A.G. Hapag–Lloyd, Defendant/Cross-
defendant Third-party plaintiff/Appellee.

No. 97–15356.
|
Argued and Submitted Jan. 15, 1998.
|
Decided April 27, 1998.

**Synopsis**

Insurer of importer brought admiralty action against carrier that delivered imported hams to retailer, seeking subrogation, after importer agreed to rescind sale of hams to retailer, because they had been frozen and thus spoiled, allegedly during shipment. Carrier filed third-party complaint against retailer for indemnification of any judgment in favor of insurer. Insurer assigned subrogation claim against retailer to carrier as part of settlement. The United States District Court for the Northern District of California, D. Lowell Jensen, J., awarded judgment to third-party plaintiff carrier, against retailer, on the subrogation claim assigned to it by

insurer. Retailer appealed, and carrier cross-appealed. The Court of Appeals, 60 F.3d 1370, reversed and remanded. On remand, the District Court, Jensen, J., entered judgment in favor of carrier on its implied indemnity claim, and retailer appealed. The Court of Appeals, Rea, District Judge, held that: (1) non-diverse parties could be dismissed to create complete diversity of citizenship on indemnity complaint; (2) attorney fees claimed under state statute could be included with damages claimed by ocean carrier to determine if its claim satisfied amount in controversy necessary for diversity jurisdiction; and (3) retailer was a tortfeasor subject to equitable indemnity claim.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

West Headnotes (10)

**[1]** **Federal Courts** Jurisdiction

The existence of subject matter jurisdiction is a question of law reviewed de novo.

26 Cases that cite this headnote

**[2]** **Federal Courts** Dismissal as to one or more parties

Non-diverse parties could be dismissed to create complete diversity of citizenship on third-party indemnity complaint; complete diversity was not required at time third-party complaint was filed.

28 U.S.C.(1988 Ed.) § 1332(a); Fed.Rules Civ.Proc.Rule 21, 28 U.S.C.A.

9 Cases that cite this headnote

**[3]** **Federal Courts** Amendments as to pleading and parties

Court of Appeals' order remanding indemnity action to district court to determine whether it had diversity jurisdiction did not bar district court from dismissing non-diverse entities.

28 U.S.C.(1988 Ed.) § 1332(a); Fed.Rules Civ.Proc.Rule 21, 28 U.S.C.A.

Case 2:26-cv-04518-CAS-SSC    Document 1-2    Filed 04/28/26    Page 61 of 71    Page ID #:80

**Galt G/S v. JSS Scandinavia, 142 F.3d 1150 (1998)**
1999 A.M.C. 608, 40 Fed.R.Serv.3d 1219, 98 Cal. Daily Op. Serv. 3108...

7 Cases that cite this headnote

**[4]    Federal Courts** 🔑 Dismissal as to one or more parties

Transportation entity that originally impleaded retailer into action arising from spoiled shipment of imported ham was dispensable party that could be dismissed to create diversity jurisdiction on remaining indemnity claim against retailer, where retailer had already been found to be at fault at time the entity was dismissed, and only party that could have recovered on claim was ocean carrier that had taken up defense on behalf of all transportation entities. 🚩28 U.S.C.(1988 Ed.) § 1332(a); Fed.Rules Civ.Proc.Rule 21, 28 U.S.C.A.

4 Cases that cite this headnote

**[5]    Federal Courts** 🔑 Interest and costs; attorney fees

Attorney fees claimed under state statute giving court discretion to award such fees to party that prevails on claim of implied indemnity could be included with damages claimed by ocean carrier on its implied indemnity claim against retailer to determine if claim satisfied amount in controversy necessary for diversity jurisdiction. 🚩28 U.S.C.(1988 Ed.) § 1332(a); West's Ann.Cal.C.C.P. § 1021.6.

339 Cases that cite this headnote

**[6]    Federal Courts** 🔑 Interest and costs; attorney fees

Where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy in determining whether diversity jurisdiction exists. 🚩28 U.S.C. (1988 Ed.) § 1332(a).

707 Cases that cite this headnote

**[7]    Indemnity** 🔑 Particular Cases and Issues

Importer's underlying principal action for cargo damage against transportation entities allegedly responsible for freezing shipment of imported ham was a tort action rather than a contract action, making equitable indemnity available against retailer that rescinded its purchase of the hams but was allegedly responsible for freezing them.

1 Case that cites this headnote

**[8]    Indemnity** 🔑 Relative culpability

According to California law, equitable indemnity permits a concurrent tort-feasor to obtain partial indemnity from another concurrent tort-feasor on a comparative fault basis.

3 Cases that cite this headnote

**[9]    Indemnity** 🔑 Particular Cases and Issues

Under California law, retailer that froze its shipment of imported ham was a tortfeasor subject to equitable indemnity claim brought by ocean carrier that had defended subrogation action brought by importer's insurer; retailer had rescinded its contract with importer, leading to loss to importer's insurer for which carrier had partially paid a settlement.

**[10]    Indemnity** 🔑 Maritime cases
**Indemnity** 🔑 Settlement with third party as bar to action

Under California law, ocean carrier that had settled subrogation claim brought by importer's insurer arising when shipment of imported ham froze was not, by virtue of its lack of fault, precluded from seeking equitable indemnity from retailer allegedly responsible for freezing the shipment.

1 Case that cites this headnote

**Galt G/S v. JSS Scandinavia, 142 F.3d 1150 (1998)**

1999 A.M.C. 608, 40 Fed.R.Serv.3d 1219, 98 Cal. Daily Op. Serv. 3108...

**Attorneys and Law Firms**

 **\*1152** James Attridge, Shawn, Mann & Steinfeld, L.L.P., San Francisco, CA, for appellant/third-party defendant.

Rubert P. Hansen, San Francisco, CA, for appellee/third-party plaintiff.

Appeal from the United States District Court for the Northern District of California; D. Lowell Jensen, District Judge, Presiding. D.C. No. CV–89–01782 DLJ.

Before: WIGGINS and TASHIMA, Circuit Judges, and REA, District Judge.[*]

[*]       The Honorable William J. Rea, United States District Judge for the Central District of California, sitting by designation.

**Opinion**

REA, District Judge:

Third-Party Defendant Safeway Stores, Inc. appeals the district court's exercise of diversity-based subject matter jurisdiction after (1) dismissing dispensable non-diverse parties and (2) aggregating the principal claim amount with the projected attorneys' fees. Safeway also appeals the grant of summary judgment in favor of Third–Party Plaintiff Hapag–Lloyd, A.G. on its equitable indemnity claim. We affirm the district court's judgment in its entirety.

**I.**

In 1987, Safeway placed an order with International Trading Co. ("ITC"), a meat importer, for 35,647 pounds of Danish ham. ITC arranged for the shipment of the ham from a supplier in Aarhus, Denmark to the Safeway warehouse in Stockton, California. Defendant Hapag–Lloyd, A.G. ("Hapag–Lloyd") is the ocean carrier which shipped the ham from Denmark to the Port of Oakland. Defendant CAN Transport, Inc. ("CAN") transported the ham by truck from Oakland to Sacramento. In Sacramento, Defendant Crystal Ice & Cold Storage ("Crystal Ice") stored the ham until Defendant D & D Services ("D & D") picked it up and transported it by truck to Safeway's facility in Stockton. These are all hereafter referred to as "the transportation entities."

The ham arrived at Safeway's warehouse on September 18, 1987. When the containers were opened eleven days later, the Safeway employees discovered that the ham was frozen and thus damaged. ITC agreed to rescind the sale and collected its alleged net loss of $53,243.21 from its insurer, Galt G/S ("Galt").

Galt then brought a subrogation action against the transportation entities alleging that they froze the ham. Hapag–Lloyd assumed the defense of the three ground carrier transportation entities and argued that the ham was not frozen during the journey to Stockton but rather was frozen after it arrived **\*1153** at the Safeway warehouse. The district court allowed the transportation entities to implead Safeway with a claim for indemnification.

On the eve of the January 1993 trial, Hapag–Lloyd paid Galt $13,500 to settle the principal cargo damage action and acquire the assignment of Galt's subrogation claim for $53,243.21 against Safeway. Two claims remained for the bench trial: Hapag–Lloyd's subrogation claim for $53,243.21, assigned to it by Galt, and Hapag–Lloyd's own third-party equitable indemnity claim, now fixed at $13,500. The district court exercised its supplemental jurisdiction to adjudicate these remaining claims.

At the trial, Hapag–Lloyd presented evidence that the Safeway warehouse has both a freezer room and a cooler room. The records indicating the room in which Safeway kept the meat prior to opening the shipping containers had been destroyed. However, Hapag–Lloyd presented further evidence that during both the ocean voyage and the ground transportation, the temperature of the ham never dropped below 28° F-its freezing temperature. The district court ruled for Hapag–Lloyd, on the claim assigned by Galt, and decided that Safeway was liable for the entire $53,243.21. The district court did not consider Hapag–Lloyd's $13,500 equitable indemnity claim.

Both Hapag–Lloyd and Safeway appealed. On appeal, the Ninth Circuit held that the claims for indemnification by Galt and by the transportation entities against Safeway did not sound in admiralty and that the district court had improperly exercised ancillary jurisdiction under Federal Rule of Civil Procedure 14(c) over the claims against Safeway. *Galt G/S v. Hapag–Lloyd, A.G.,* 60 F.3d 1370, 1373–74 (9th Cir.1995). Remanding the action, this Court instructed the district court to dismiss the subrogation claims and to consider "whether to grant Hapag–Lloyd leave to amend its third party complaint

**Galt G/S v. JSS Scandinavia, 142 F.3d 1150 (1998)**
1999 A.M.C. 608, 40 Fed.R.Serv.3d 1219, 98 Cal. Daily Op. Serv. 3108...

to establish [diversity] jurisdiction and pursue its third party claim under Rule 14(a)." *Id.* at 1375.

Thus, on remand, the trial court had before it only Hapag–Lloyd's equitable indemnity claim against Safeway for $13,500. The only possible basis for subject matter jurisdiction would have been diversity of the parties. However, while Safeway is a Delaware corporation with its principal place of business in the state of California and Hapag–Lloyd is a German corporation with its principal place of business in Hamburg, Germany, the remaining transportation entities are California corporations. The district court granted Hapag–Lloyd's motion to dismiss CAN, Crystal Ice, and D & D, thus creating diversity.

A second obstacle to federal subject matter jurisdiction was the then-required $50,000 amount in controversy. Hapag–Lloyd's equitable indemnity claim against Safeway was for the $13,500 spent to settle with Galt, plus the attorneys' fees spent to fend off Galt's claim. In order to reach the requisite amount in controversy, the district court allowed Hapag–Lloyd to aggregate its $13,500 equitable indemnity claim with its claimed attorneys' fees of $44,266,65. [1] The district court then assumed subject matter jurisdiction under 28 U.S.C. § 1332(a) and granted Hapag–Lloyd's motion for summary judgment, holding it to be entitled to equitable indemnity under California law. The district court also held that Hapag–Lloyd was permitted by California Code of Civil Procedure § 1021.6 to recover attorneys' fees, which were later awarded in the sum of $35,662.90.

[1]   The court did not allow aggregation of the claimed $6,129.09 in costs, however.

In this instant appeal, Safeway contends that the district court erred by: (1) granting the motion to dismiss the non-diverse transportation entities, and including attorneys' fees in the amount in controversy; and (2) granting summary judgment for Hapag–Lloyd on its equitable indemnity claim.

## II.

**[1]**   The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The existence of subject matter jurisdiction is a question of law reviewed *de novo. Ma v. Reno,* 114 F.3d 128, 130 (9th Cir.1997). A grant of summary

judgment is reviewed *de* **\*1154** *novo,* as well. *Covey v. Hollydale Mobilehome Estates,* 116 F.3d 830, 834 (9th Cir.1997).

## A.

*Dismissal of non-diverse parties*
Safeway contends that the district court erred in granting Hapag–Lloyd's motion to dismiss the three California transportation entities pursuant to Federal Rule of Civil Procedure 21 in order to create complete diversity among the remaining parties. Rule 21 establishes, in relevant part, that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms that are just."

First, Safeway argues that complete diversity must be present at the time of the filing of the third-party complaint. Second, Safeway argues that this Court, in the first appeal, remanded to the district court with explicit instructions to determine the existence of diversity jurisdiction without dismissing any parties. Third, Safeway insists that Crystal Ice is a real party in interest and cannot be dismissed because Crystal Ice is the party that originally sought to implead Safeway.

**[2]**   All three of Safeway's arguments are without merit. First, Rule 21 specifically allows for the dismissal of parties at *any stage of the action.* There is no requirement that diversity exist at the time of the filing of the complaint. According to the Supreme Court in *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989), "it is well settled that Rule 21 invests district courts with authority to allow a dispensable non-diverse party to be dropped at any time, even after judgment has been rendered." *Id.* at 832, 109 S.Ct. at 2222. In fact, *Newman–Green* establishes that "any stage of the action" includes the appeal, holding that an appellate court has the same Rule 21 power as a district court to dismiss a non-diverse party as long as doing so does not prejudice the remaining parties. Otherwise, the Supreme Court reasoned, if the suit were dismissed altogether for lack of subject matter jurisdiction, the plaintiff would simply refile against the defendants in the district court without the non-diverse parties. *Id.* at 837, 109 S.Ct. at 2225. "Nothing but a waste of time and resources would be engendered by ... forcing these parties to begin anew." *Id.* at 838, 109 S.Ct. at 2225; *see also Continental Airlines,*

1999 A.M.C. 608, 40 Fed.R.Serv.3d 1219, 98 Cal. Daily Op. Serv. 3108...

*Inc. v. Goodyear Tire & Rubber Co.,* 819 F.2d 1519, 1523 (9th Cir.1987) ( "Despite earlier case law to the contrary, it is now settled in this circuit that practicality prevails over logic and that we may dismiss a dispensable, non-diverse party in order to perfect retroactively the district court's original jurisdiction.")

 **[3]** Safeway's second argument is that the earlier Ninth Circuit decision in this case, *Galt G/S v. Hapag–Lloyd, A.G.,* 60 F.3d 1370 (9th Cir.1995), specified that the district court, upon remand, determine diversity without dismissing any parties. Safeway points to the following language:

> The district court may have diversity jurisdiction over Hapag–Lloyd *and the other transportation defendants'* indemnity claim against Safeway. We remand the case to the district court to consider in its discretion whether to grant Hapag–Lloyd leave to amend its third party complaint to establish such jurisdiction and pursue its third party claim under Rule 14(a).

*Id.* at 1375 (emphasis added). Safeway contends that this language expressly prohibits the district court from dismissing those non-diverse *other* transportation entities. This Court, however, sees no such express prohibition against dismissing any parties in its earlier decision. The district court was not limited in any way as to its procedural powers upon remand.

 **[4]** Safeway's third argument is that since Crystal Ice was the party to implead Safeway into the case, Crystal Ice is a real party in interest and cannot be dismissed. Safeway fails to support this argument with any rule of law. Further, when the district court dismissed Crystal Ice, it had already determined that Safeway was solely at fault for the damage to the ham, leaving no possibility that Crystal Ice could be found at fault. Finally, Hapag–Lloyd had taken up the defense **\*1155** on behalf of all the transportation entities, and Hapag–Lloyd alone paid the $13,500 to settle with Galt. Crystal Ice has nothing to recover in indemnity from Safeway and the district court properly found that Crystal Ice and the other transportation entities were dispensable parties.

## B.

*Inclusion of attorneys' fees in the amount in controversy*
 **[5]** Hapag-Lloyd spent $13,500 to settle with Galt on the eve of the bench trial at which the district court determined that Safeway froze its own ham. Hapag–Lloyd claims to have spent $44,266.65 in attorneys' fees in defense against Galt's claim. At the time of that trial, the amount in controversy requirement for diversity-based subject matter jurisdiction, pursuant to 28 U.S.C. § 1332(a), was $50,000 excluding interest and costs. The district court aggregated the claimed attorneys' fees with the $13,500 in order to reach that amount. In doing so the district court relied on *Goldberg v. CPC International Inc.,* 678 F.2d 1365 (9th Cir.1982), *cert. denied,* 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982), where this Court held that "attorneys' fees can be taken into account in determining the amount in controversy if a statute authorizes fees to a successful litigant." *Id.* at 1367.

While this Court made no such distinction in *Goldberg,* Safeway argues that only attorneys' fees *mandated* by the underlying statute can be included in the amount in controversy; *discretionary* attorneys' fees must be excluded as costs. The "authorizing" statute in *Goldberg* mandates the award of attorneys' fees by providing that a person injured in his or her business property by reason of anything forbidden or unlawful may sue and "shall" be awarded reasonable attorneys' fees. The underlying statute in the instant case, however-California Code of Civil Procedure § 1021.6–provides for an award of attorneys' fees at the district court's discretion:

> Upon motion, a court after reviewing the evidence in the principal case *may* award attorney's fees to a person who prevails on a claim for implied indemnity if the court finds (a) that the indemnitee through the tort of the indemnitor has been required to act in protection of the indemnitee's interest by bringing an action against or defending an action by a third person and (b) if that indemnitor was properly notified of the demand to bring the action or provide the defense and did not avail itself of

Case 2:26-cv-04518-CAS-SSC    Document 1-2    Filed 04/28/26    Page 65 of 71    Page ID #:84

**Galt G/S v. JSS Scandinavia, 142 F.3d 1150 (1998)**
1999 A.M.C. 608, 40 Fed.R.Serv.3d 1219, 98 Cal. Daily Op. Serv. 3108...

the opportunity to do so, and (c) that the trier of fact determined that the indemnitee was without fault in the principal case which is the basis for the action in indemnity or that the indemnitee had a final judgement entered in his or her favor granting a summary judgment, a nonsuit, or a directed verdict.

Cal.Civ.Proc.Code § 1021.6 (West 1998) (emphasis added).

The district court's reliance on *Goldberg* is not misplaced; however, the *Goldberg* opinion does not address Safeway's contended distinction between mandatory and discretionary attorneys' fees. There is no case law in this circuit which explicitly addresses that proposed distinction. However, 14A C. Wright & A. Miller, *Federal Practice and Procedure, § 3712, at 178 (1985)*, states the following:

> When the applicable substantive law makes the award of an attorney's fee discretionary, a claim that this discretion should be exercised in favor of plaintiff makes the requested fee part of the amount in controversy. But when there is no direct legal authority for an attorney's fee, a request for a fee cannot be included in the computation or the jurisdictional amount.

*See also* ⚑ *Velez v. Crown Life Ins. Co.,* 599 F.2d 471, 474 (1st Cir.1979) ( "[As] a general rule, attorneys' fees are excludable in determining the amount in controversy because, normally, the successful party does not collect his attorneys' fees in addition to or as part of the judgment [citation omitted]. There are however, two logical exceptions to this rule: one where the fees are provided for by contract, and two, where a statute mandates *or allows* the payment of such fees." (emphasis added)); *Blank v. Preventive Health Programs, Inc.,* 504 F.Supp. 416, 421 (S.D.Ga.1980) (citing **\*1156** 14 C. Wright & A. Miller, *Federal Practice and Procedure, § 3712, at 507 (1976)*).

**[6]** We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.

### C.

*Equitable indemnity claim*

After establishing diversity-based subject matter jurisdiction, the district court granted summary judgment for Hapag–Lloyd on its equitable indemnity claim. Safeway appeals this ruling, arguing that California law precludes equitable indemnity given the facts of this case. Specifically, Safeway makes two arguments: (1) the alleged wrong is not a tort; and (2) equitable indemnity is not a permissible remedy when the claimed indemnitee is totally without fault. Both arguments are without merit.

**[7]** Safeway contends that the underlying principal action for cargo damage is in contract rather than tort and thus equitable indemnity is inapplicable. However, this Court has already established that a vessel owner's breach of its duty of care for a cargo gives rise to liability in tort, irrespective of the contractual obligations of the parties. ⚑ *All Alaskan Seafoods, Inc. v. M/V SEA PRODUCER,* 882 F.2d 425, 429–30 (9th Cir.1989). The existence of a contract between Safeway and Galt does not preclude Hapag–Lloyd's equitable indemnity claim against Safeway.

**[8]** **[9]** Safeway also contends that neither it nor Hapag–Lloyd is a tortfeasor and that California law requires both indemnitee and indemnitor to be tortfeasors for a proper equitable indemnity claim. According to California law, equitable indemnity permits "a concurrent tortfeasor to obtain partial indemnity from another concurrent tortfeasor on a comparative fault basis." ⚑ *American Motorcycle Ass'n. v. Superior Court of Los Angeles County,* 20 Cal.3d 578, 598, 146 Cal.Rptr. 182, 578 P.2d 899 (1978). Safeway reasons that it cannot qualify as a tortfeasor because it froze its own ham and cannot tortiously act against itself. Further, Safeway reasons that Hapag–Lloyd cannot qualify as a tortfeasor because it successfully proved itself free of fault.

Safeway's reasoning would produce an unjust result. Safeway rescinded the contract with ITC, which ultimately led to an action by ITC's insurer, Galt, against the various transportation entities. Those transportation entities

Case 2:26-cv-04518-CAS-SSC    Document 1-2    Filed 04/28/26    Page 66 of 71    Page
ID #:85

**Galt G/S v. JSS Scandinavia, 142 F.3d 1150 (1998)**
1999 A.M.C. 608, 40 Fed.R.Serv.3d 1219, 98 Cal. Daily Op. Serv. 3108...

eventually proved that Safeway itself caused the damage. Those transportation entities—specifically Hapag–Lloyd—incurred costs to fend off Galt's suit, when all the while Safeway was the party that damaged the ham. After sitting back and letting the transportation entities defend themselves against Galt for damage to the ham caused by Safeway, Safeway cannot now duck responsibility by arguing that since it froze its own ham, it cannot be a tortfeasor. The wrongdoing is not that Safeway damaged its own property but rather that Safeway handled its property in such a way that led to a loss to Galt for which Hapag–Lloyd has already paid a settlement. This perspective supports a claim for equitable indemnity. The California Supreme Court recognizes the "obligation resting on one party to make good a loss or damage another has incurred." *Bay Dev., Ltd. v. Superior Court,* 50 Cal.3d 1012, 1029, 269 Cal.Rptr. 720, 791 P.2d 290 (1990) (quoting *E.L. White, Inc. v. City of Huntington Beach,* 21 Cal.3d 497, 506, 146 Cal.Rptr. 614, 579 P.2d 505 (1978)). That principal applies to Safeway here.

[10]    As to Hapag–Lloyd's status as a tortfeasor, *Mullin Lumber Co. v. Chandler,* 185 Cal.App.3d 1127, 230 Cal.Rptr. 122 (1986), establishes a clear rule that a settling innocent party can take on the mantle of joint tortfeasor with the indemnitor in order to maintain an action for equitable indemnity. According to *Mullin Lumber,* a settling defendant is held to a lesser burden of proof in order to establish a right to indemnity and need not prove his or her own fault to be entitled to indemnity:

> We hold in an action for equitable indemnity based on comparative fault the settling defendant need only prove the settlement was based on a reasonable estimate of its liability at the time of the settlement.

**\*1157**  ...

The court need only find the defendant's 'estimate of potential liability was reasonable at the time of settlement' ... [and][t]his requirement is satisfied if the injured party could state a recognized cause of action against the settling defendant and the settlor faced actual, potential or reasonably apparent liability.

...

The settling defendant would still have to prove fault on the part of the non-settling defendant contributed to the plaintiff's injuries.

*Id.* at 1133–34, 230 Cal.Rptr. 122. Thus, by California law, Hapag–Lloyd is not precluded from equitable indemnification by virtue of its lack of fault.

### D.

The district court did not err in dismissing non-diverse parties under Rule 21 or in including discretionary attorneys' fees in the amount in controversy under 28 U.S.C. § 1332. We agree with the district court that California law permits Hapag–Lloyd to maintain an equitable indemnity claim.

AFFIRMED.

**All Citations**

142 F.3d 1150, 1999 A.M.C. 608, 40 Fed.R.Serv.3d 1219, 98 Cal. Daily Op. Serv. 3108, 98 Daily Journal D.A.R. 4313

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**2010 WL 5383296 (Cal.Superior) (Verdict and Settlement Summary)**

Copyright (c) 2019 ALM Media Properties, LLC. All Rights Reserved

Superior Court, Los Angeles County, California.

Mark A. Crawford v. DIRECTV Inc.

No. BC417507

DATE OF VERDICT/SETTLEMENT: September 29, 2010

TOPIC: EMPLOYMENT - DISABILITY DISCRIMINATION - EMPLOYMENT - FAILURE TO ACCOMMODATE - EMPLOYMENT - WRONGFUL TERMINATION - EMPLOYMENT - RETALIATION - EMPLOYMENT - CALIFORNIA'S FAIR EMPLOYMENT & HOUSING ACT

Worker With Ptsd Said He Was Forced to Watch Combat Footage

**SUMMARY:**

RESULT: Arbitration

Award Total: $353,172

The parties entered arbitration, and the arbiter found DIRECTV had failed to offer Crawford reasonable accommodations or engage in the interactive process required by FEHA after Crawford was placed on leave. He found no wrongful termination, retaliation or discrimination.

Crawford was awarded $149,234 for past lost income, $25,200 for non-economic damages, $159,762.50 for attorney fees, $11,123.30 for arbitration costs, and $7,851.80 for prejudgment interest.

**EXPERT WITNESSES:**

Plaintiff: David T. Factor; Economics; Pasadena, CA

**ATTORNEYS:**

Plaintiff: Vincent Calderone; Bononi Law Group; Los Angeles, CA (Mark A. Crawford)

Defendant: Dianne Baquet Smith; Sheppard, Mullin, Richter & Hampton; Los Angeles, CA (DIRECTV Inc.)

JUDGE: Sherman W. Smith

RANGE AMOUNT: $200,000-499,999

STATE: California

COUNTY: Los Angeles

**INJURIES: Crawford claimed he was terminated from his job due to DIRECTV's failure to grant him reasonable accommodation of his disability. He sought an unspecified amount for lost income and non-economic damages.**

**Facts:**

In 1999, plaintiff Mark Crawford, a veteran of the first Gulf War, was hired as a broadcast operator at DIRECTV's Los Angeles broadcast center. In October 2006, his schedule was changed from Sunday through Wednesday to Wednesday through Sunday. He requested a return to his original schedule, claiming he was participating in therapy for post-traumatic stress disorder on

his original days off. He also submitted a note from his social worker which stated that viewing violent images aggravated his condition. He was not returned to his original schedule.

In April 2007, Crawford was placed on administrative leave after two supervisors reported what they claimed was a threatening e-mail. After an evaluation, he was found medically unfit for his position due to his PTSD and placed on medical leave. He was terminated in April 2008 when the leave was exhausted.

Crawford sued DIRECTV, alleging violations of the Fair Employment and Housing Act, wrongful termination and retaliation. He claimed DIRECTV failed to offer him reasonable accommodations for his disability or engage in an interactive process after he was placed on leave. He alleged he requested a reasonable accommodation to a position where he would not be required to watch unedited combat footage, and that he knew of and was qualified for a number of such positions at the company. He claimed no discussions of accommodations were made after he was placed on medical leave.

DIRECTV argued that Crawford did not claim any disabilities prior to his schedule change and that it offered him reasonable accommodations such as days off, job transfers, or a leave of absence, but that he refused them. DIRECTV claimed no accommodations were possible after Crawford was placed on leave as he was never medically cleared to return to work. It further argued there were no available positions where Crawford would not be required to view violent images. The defense contended Crawford was terminated because he was not medically cleared to return to work at the time he ran out of medical leave time.

ALM Properties, Inc.
Superior Court of Los Angeles County, Central

PUBLISHED IN: VerdictSearch California Reporter Vol. 9, Issue 48

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:26-cv-04518-CAS-SSC    Document 1-2    Filed 04/28/26    Page 69 of 71   Page
ID #:88
Fred Denenberg v. California Department of Transportation, 2006 WL 5305734 (2006)

**2006 WL 5305734 (Cal.Super.) (Verdict and Settlement Summary)**

Copyright (c) 2019 ALM Media Properties, LLC. All Rights Reserved
Superior Court, San Diego County, California

Fred Denenberg v. California Department of Transportation

No. GIC836582
DATE OF VERDICT/SETTLEMENT: September 16, 2006
TOPIC: EMPLOYMENT - SEXUAL ORIENTATION DISCRIMINATION - EMPLOYMENT - FAILURE TO ACCOMMODATE

Clerk Claimed Discrimination Based on Disability, Orientation

**SUMMARY:**
RESULT: Verdict-Plaintiff

The jury did not find any discrimination based on sexual orientation. It did, however, find the defendant failed to provide Denenberg with a reasonable accommodation and discriminated against him on the basis of a disability. The jury awarded Denenberg $119,000 in economic damages and $25,000 in noneconomic damages, for a total $144,000. The judge awarded him an additional $490,000 in attorney's fees and $133,000 in costs, and ordered the department of transportation to award him a retroactive promotion. The promotion will result in an additional $12,000 of annual earnings through his career as well as upward adjustments to his retirement benefits.

**EXPERT WITNESSES:**
Plaintiff: Brian P. Brinig, J.D., C.P.A.; Damage Analysis; San Diego, CA Christopher Benbo, M.D.; Psychiatry; La Jolla, CA George Pratt, Ph.D.; Psychology/Counseling; La Jolla, CA Michael A. Robbins; Human Resources Policies; Bell Canyon, CA Defendant: Mark A. Kalish, M.D.; Psychology/Counseling; San Diego, CA
**ATTORNEYS:**
Plaintiff: Paul D. Jackson; Law Offices of Paul D. Jackson; San Diego, CA (Fred Denenberg); David M. deRubertis; The deRubertis Law Firm; Woodland Hills, CA (Fred Denenberg)
Defendant: Christopher J. Welsh; California Department of Transportation; San Diego, CA (California Department of Transportation); Julie A. Jordan; CalTrans Legal Department; San Diego, CA (California Department of Transportation)

JUDGE: Steven R. Denton

RANGE AMOUNT: $100,000-199,999

STATE: California
COUNTY: San Diego

**INJURIES: Denenberg claimed that he suffered emotional distress and sought treatment from a psychologist. He also sought to recover the income he lost when he took a leave of absence to cope with the distress caused by the way his employer treated him.**

**Facts:**
In 1998 plaintiff Fred Denenberg, a gay man, was hired by the California Department of Transportation as an office technician, an entry-level position. He received excellent performance reviews and was promoted to assistant administrator. Starting in

Case 2:26-cv-04518-CAS-SSC    Document 1-2    Filed 04/28/26    Page 70 of 71    Page ID #:89

1999, he sought promotion to associate administrator, the next job level above his own. Such a promotion would normally occur in relatively short time, he alleged, but his requests were repeatedly denied. He was told that budgetary constraints had forced the company to put into place a hiring and promotions freeze. When the freeze was lifted on July 1, 2004, Joseph Hull, the deputy director of traffic operations, promised Denenberg that his promotion would be processed.

When Hull had not yet finished processing the paperwork by late August 2004 despite Denenberg's further complaints, Denenberg sought legal counsel. His attorney, Paul Jackson, sent the department's upper management a letter alleging that Denenberg had been the subject of harassment based on his sexual orientation and that the department had failed to promote him because he was gay. Afterward, Denenberg's superiors and co-workers leveled accusations of wrongdoing against him. The alleged wrongdoing included telling a co-worker to "kiss his ass," making derogatory comments about a co-worker's religion, slamming a door in a co-worker's face and acting in a rude manner toward co-workers and management.

In late September 2004, Denenberg, who claimed to be suffering from stress and depression related to his workplace, complained about a sexually related email sent from a co-worker a year earlier. At the instruction of a psychologist, he went on a leave of absence, and the department stopped processing his promotion.

In August 2005, one year after his original stress leave began, Denenberg's psychologist recommended that he be given an accommodation that allowed him to telecommute. Hull did not allow telecommuting, however, and denied the accommodation. The psychologist revised the accommodation to request that Denenberg return to the workplace but that any face-to-face interaction with the co-workers he claimed had retaliated against him be minimized. Hull denied that request as well.

When Denenberg was able to return to work without restriction, the department informed him it had eliminated his position and offered him six other positions that were equivalent or nearly equivalent to his former position. Denenberg declined them all.

Denenberg sued the California Department of Transportation for discrimination and retaliation on the basis of sexual orientation and discrimination and retaliation on the basis of disability. He contended that for a period of about 1.5 years he was harassed based on his sexual orientation; the alleged harassment consisted of perceived sexual advances, derogatory comments about his orientation and a degrading, homophobic email. He claimed that the department's refusal to promote him in September 2004 was in retaliation for the letter his attorney wrote complaining of harassment and discrimination. He also claimed that the department's stated reason for not promoting him--that he went on medical leave--indicated disability discrimination and showed that the company was retaliating against him for seeking accommodation of a disability. He further alleged that when his psychologist approved his return to work with a minimum of interaction with co-workers, there were desks and offices available that could have been used to meet this request.

The defendant denied any wrongdoing. It claimed that the reason Denenberg was not promoted was because he had either failed the promotional exam or did not receive a high enough score for placement. The state budget crises, the department's budget, and the lack of available work prevented promotions for new hires until June 30, 2004. Once the freeze was lifted, the plaintiff was promised a noncompetitive promotion. It contended that it had begun processing a noncompetitive promotion for Denenberg at the time he took his leave but stopped when he was out for almost two years and the department did not know when or whether he would return to work and that, under the Civil Service Act, the promotion could not go through because he was not at work to accept the new appointment. This had implications for his retirement and benefits.

The department also claimed that the request to telecommute was denied because the position required interaction with co-workers and the timely sharing of information. The department noted that over the course of nine months, it offered the plaintiff six alternative positions at the same classification and rate of pay but he refused all of them. Finally, the company denied any knowledge of the claimed harassment.

Before the trial began, the plaintiff dropped the claim that he should have been promoted before 2003. The state had a freeze on promotions and new hires between June 2003 and June 2004.

**Fred Denenberg v. California Department of Transportation, 2006 WL 5305734 (2006)**

At trial, the defense impeached Denenberg's credibility by attacking his assertion that he had never been involved in any other lawsuits by introducing numerous lawsuits that he had either filed or were filed against him.

The defendant claimed that it was not his workplace problems that caused the plaintiff's medical condition but rather other stressors, such as a tumultuous relationship with his domestic partner who suffered from chronic medical problems. The defendant introduced evidence of domestic discord, including allegations of domestic abuse.

Insurer:

Self insured California Department of Transportation

ALM Properties, Inc.
Superior Court of San Diego County, at San Diego

PUBLISHED IN: VerdictSearch California Reporter Vol. 7, Issue 4

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---